## PHILLIPS ET AL. v. HAMILTON.

MINES AND MINERALS—OIL AND GAS—LEASE—CONSTRUCTION—IMPLIED COVENANT—DILIGENCE—ABANDONMENT—FORFEITURE.

1. A lease for the purpose of boring for and piping oil and gas upon the leased premises required the lessee to commence operations within one year, and to deliver to the lessor a certain percentage of the oil, and to pay a stated sum yearly for the gas from each gas well drilled upon the premises, the product from which is marketed and used off the premises. *Held*, that the lease contained an implied covenant that the work of prospecting and development should continue, after the time limited for commencing operations, with reasonable diligence, and it was therefore the duty of the lessee to proceed with reasonable diligence to prospect and develop the premises, having due regard to his own interest and that of the lessor, but a mere temporary cessation of operations or removal of machinery would not necessarily work a forfeiture of the lease.

2. It is not the duty of the court to make contracts for the parties, but to interpret the language they have used and to construe the contract they have entered into according to established legal principles.

3. "Abandonment" is the relinquishment or surrender of rights or property by one person to another, and includes both the intention to abandon and the external act by which the intention is carried into effect.

4. An oil and gas lease executed in August, 1902, required operations to be commenced within one year from the ex-

ecution of the lease. In October, 1902, the lessee commenced work, and with a portable rig drilled a well 466 feet deep in which gas was found but not in commercial quantities, whereupon the well was cased, the drilling rig removed to adjoining property, and a pipe laid from the well to said adjoining property and there used for drilling by the lessee. In February or March, 1903, the lessee returned to the premises, cleaned out the well and replaced the casing, and in October, 1903, selected a site for another well, and hauled and placed on the land some timbers for a standard derrick. December 14, 1903, the lessor notified the lessee that he rescinded and cancelled the lease for the lessee's failure to commence operations. In March, 1904, the lessee moved a drilling rig onto the premises, and commenced drilling a second well, and continued the drilling until April 28, 1904, when the well had been sunk to the depth of 360 feet, and cased, and while preparing to sink it deeper the work was stopped by an injunction. The lands were situated in an undeveloped field supposed to contain oil and gas, but there were no producing wells in the vicinity, nor were the leased lands being drained by wells on adjacent lands. *Held,* (1) that the lease was not forfeited by abandonment; and (2) that there was not such absence of reasonable diligence on the part of the lessee as would warrant a cancellation of the lease.

[Decided May 25, 1908.]                    (95 Pac. 846.)

ERROR to the District Court, Converse County; HON. RICHARD H. SCOTT, Judge.

Action by William F. Hamilton against J. Bevan Phillips, trustee, and Douglas Oil Fields, a corporation, to enjoin the defendants from drilling for oil and gas upon certain described premises and to exclude them from the same. From a judgment in favor of the plaintiff, the defendants prosecuted error. The lands had been leased by Hamilton to Phillips for the purpose of their exploration for oil and gas, and the lease had been assigned by the latter to his co-defendant. The plaintiff declared the lease cancelled and brought this action. The other material facts are stated in the opinion.

*W. R. Stoil,* for plaintiffs in error.

Mere inadequacy of consideration or other inequality in the terms of a lease does not in itself constitute a ground for its avoidance in equity. The lease in controversy was not only based upon a good and sufficient consideration, but it is not objectionable on the ground that the consideration was inadequate. (Brewster v. Lanyon Zinc Co., 140 Fed. 801; 1 Story Eq. Jur., Sec. 244; Marble Co. v. Ripley, 10 Wall. 339; Oil Co. v. Guffey, 52 W. Va. 88; Brown v. Fowler, 56 O. St. 507; Oil Co. v. Oil Syndicate, (La.) 38 So. 932; Oil & Gas Co. v. Robinson, 71 O. St. 302; Gas & Fuel Co. v. Echert, (Ohio) 71 N. E. 281.) The mere fact that the lessee has a right to remove all his property at any time, does not create a tenancy at will nor show a want of mutuality. A lease for a definite period is not a tenancy at will, nor one for so long a time as oil and gas may be found thereon in paying quantities. Any lease or contract imposing mutual conditions or obligations cannot be considered as wanting in mutuality. Where the lessor and lessee each covenant and agree to do certain things, the lease or contract is necessarily mutual on its face. (Brewster v. Lanyon Zinc Co., *supra*; 9 Cyc. 334; Gas & Fuel Co. v. Echert, 70 O. St. 127; Davis v. Wells Fargo & Co., 104 U. S. 159; Brown v. Fowler, *supra*; Oil Co. v. Snyder, 106 Fed. 64; Oil Co. v. Oil Syndicate, *supra*; Dickey v. Brick & Tile Co., (Kan.) 76 Pac. 398.)

A greater degree of diligence may with propriety be exacted of a lessee in a field which has aready been developed than would be justified in an undeveloped field and where the lessee is a pioneer in attempting to demonstrate the existence of oil and gas. The evidence in this case establishes the fact that doubts were entertained as to whether there was an appreciable quantity of oil and gas in the locality where the lands were situated, and that the well upon the premises in question was the first one in which there had been a showing of gas. The evidence is not disputed that the well sunk by the lessee upon the leased premises was intended as a test well to demonstrate as a

precautionary measure whether the supposed strata of gas sand did in reality exist. (Baumgardner v. Browning, 12 O. C. C. 73.) ·

Where a lease specifies a particular ground of forfeiture no other ground will be implied. (Harris v. Ohio Oil Co., 57 O. St. 118; McKnight v. Kruetz, 51 Pa. St. 232; Koch's App. 93 Pa. St. 434; Armitage v. Oil & Gas Co., (Ky.) 80 S. W. 177; Thornton on Oil & Gas, 91.)

It is incumbent upon one alleging abandonment to prove it by a preponderance of the evidence; and abandonment is a matter of intention. A mere suspension of operation does not constitute abandonment. (1 Cyc. 4-8; Price v. Black, (Ia.) 101 N. W. 1056; Paine v. Griffiths, 86 Fed. 452.) The lessee clearly commenced operations within the time specified in the lease for that purpose.

Although the lease in question does not specify the extent of the operations to be carried on, there is, however, implied the condition that at the expiration of the first year the work was to be prosecuted with reasonable diligence, but nothing more. A temporary suspension of operations does not show, necessarily, a lack of reasonable diligence. Even if the lessor had a right to terminate the lease by declaring an abandonment, he waived that right by permitting the lessee to return and resume operations. (Price v. Black, supra.)

The exercise of reasonable diligence is necessarily a matter largely left to the determination of the lessee, and where he acts honestly and in good faith, exceedingly strong evidence is required to justify a conclusion that the lessee had abandoned the land. The evidence in this case is clearly insufficient to show an abandonment or want of diligence. (Brewster v. Zinc Co., supra; Gas & Oil Co. v. Leer, (Ind.) 72 N. E. 283.)

Though the lessor may have the right at a given time to declare a forfeiture as by reason of abandonment, if he neglects to do so at such time, but on the contrary, permits the lessee to resume operations without protest or opposition on the part of the lessor, the latter waives any right

he may have had to claim abandonment or other non-compliance with the terms of the lease. (Thornton, 159; Oil Co. v. Hurlbut, 14 O. C. C. 144; Kellar v. Craig, 126 Fed. 630; Petroleum Co. v. Lubricating Co., (Ky.) 87 S. W. 1102.) The lease expressing but one cause of forfeiture, viz.: non-payment of rent, a forfeiture could not be declared for a breach of the implied covenant as to diligence, had there been a breach thereof. (1 Pom. Eq. Jur., Sec. 459; Thornton on Oil & Gas, Secs. 156, 157.) While as a general rule notice of forfeiture is not necessary where the lessor is in possession of the premises, yet, if the lessee has substantially complied with the lease, or made a bona fide attempt to do so, and the lessor claims a forfeiture because the terms have not been strictly complied with, or the land has not been fully developed, he is required to give notice to the lessee of his intention to declare a forfeiture and to specify the ground thereof, and to give the lessee reasonable time after such notice to comply with the lease, so far at least as development is concerned. (Thornton on Oil & Gas, 158; Gas Co. v. Kelsay, 164 Ind. 563.) Temporary suspension of operations is not sufficient in itself to establish abandonment. (Gas Co. v. Ross, 32 Ind. App. 638; Baumgardner v. Browning, *supra*; Thornton, Secs. 133, 137; 1 Cyc. of Ev. 1-13.) A forfeiture is never enforced where the principles of right, justice and morality would be denied, and wherever a forfeiture would be oppressive, courts of equity have refused to enforce it. The enforcement of the forfeiture claimed in this case would be exceedingly harsh and oppressive and in violation of the plainest principles of right and justice. (1 Pom. Eq. Jur., 113 *et seq.*; Brewster v. Lanyon Zinc Co., *supra*.)

*F. H. Harvey,* for defendant in error.

The lease in question is to be construed as requiring the lessee to commence drilling within one year and to continue such drilling, without interruption, to success or abandonment. (Bryan Law of Petroleum &c., Sec. 217.) In case the lessee concluded to quit he had a right to remove his

machinery and fixtures. The fact that he did remove the same is to be taken as conclusive evidence of abandonment. (McNish v. Stone, 152 Pa. St. 457; Bryan, Sec. 219.) The lessee's right to remove machinery "and fixtures could be exercised only after having demonstrated a non-productiveness of the land and concluded to terminate the lease. He had no right to remove during a continuance of the lease. (Thornton, Sec. 191; White on Min. & Min. Rem., Secs. 137-186; Bryan, Sec. 62.) When the lessee left the premises with his drilling outfit the lease was of no further effect and thereafter became void for want of further mutuality. Where the lessee has the right to abandon the lease after operations begun and remove his property from the premises and he does abandon such operations, the lease is then at an end. (Thornton, Sec. 53; Paine v. Griffith, 86 Fed. 452; Cowan v. Iron Co., 3 S. E. 120; Huggins v. Dailey, 90 Fed. 606; Steelsmith v. Gartlan, 29 S. E. 978; Oil Co. v. Oil Co., 112 Fed. 376; Reese v. Zinn, 103 Fed. 97; Foster v. Gas Co., 90 Fed. 75; Barnsdall v. Boley, 119 Fed. 201; Cowan v. Iron Co., supra; Ray v. Gas Co., 20 Atl. 1065.)

An oil and gas lease granting the lessee the option to annul the lease at his pleasure and withholding such option from the lessor may, if based upon a sufficient consideration, still be mutual and valid, but only so long as the lessee is bound by some covenants of the lease, express or implied. (Oil Co. v. Oil Co., 112 Fed. 376; Reese v. Zinn, 103 Fed. 97; Foster v. Oil Co., 90 Fed. 173.) If a single well demonstrates that there is no oil or gas, the contract is at an end as soon as the first well is abandoned as unsuccessful. (Thornton, p. 129; Oil Co. v. Fretts, 25 Atl. 752; Oil Co. v. Gas Co., 42 S. E. 255.)

It is immaterial what the lessee's intention was if he actually left the premises with his drilling outfit. (Thornton, p. 198 and note, and Secs. 137, 158; Oil Co. v. Gas Co., 42 S. E. 655.) The evidence is sufficient to show abandonment by the lessee, especially as nearly all the work was done by the assignee of the lease after its annulment, with

full knowledge of the facts. (Rawlins v. Armel, (Kan.) 79 Pac. 685.) After the lessee ceased operations and removed from the premises the lessor could not have compelled him to return and renew drilling, and the lessee having, therefore, a mere optional right of entry, that right could be terminated by either party at his will. (Thornton, Sec. 71; Trees v. Oil Co., 34 S. E. 933; Steelsmith v. Gartlan, *supra.*) Oil and gas leases are to be construed strongly against the lessee. (Thornton, Sec. 78.) A lease for the purpose of securing prompt and diligent development containing no provision for an alternative payment of cash rental in case of suspension of operations would not contain a provision allowing the lessee, in his arbitrary discretion, to remove from the premises the only appliance with which he can possibly develop the land, and still permit him to hold the lease. Had the parties proposed that the lessee should have such right they would have inserted the usual alternative provision for a cash rental during suspension of operations.

BEARD, JUSTICE.

This action was commenced by the defendant in error, Hamilton, against the plaintiffs in error, in the district court of Converse County, to enjoin the plaintiffs in error from drilling for oil and gas upon certain described lands and to exclude plaintiffs in error therefrom. The case was tried to the court resulting in a general finding and judgment in favor of Hamilton, who was adjudged to be entitled to the exclusive possession of the premises, and enjoining the plaintiffs in error from further drilling for oil or gas on said lands, or from otherwise trespassing thereon. From that judgment plaintiffs in error bring the case here on error.

The material facts of the case are not in dispute and are as follows: On August 4, 1902, Hamilton leased to J. Bevan Phillips, Trustee, one of the plaintiffs in error, his heirs and assigns, the real estate in controversy, consisting of about 360 acres, for the "sole and only purpose of boring,

mining and excavating for Petroleum or Carbon oil and gas, and piping oil and gas" on the premises. The consideration expressed in the lease is one dollar and the stipulations, rents and covenants therein contained to be paid, kept and performed by the lessee. The lease is for the term of ten years and so long thereafter as oil or gas shall continue to be found thereon in paying quantities. The lessee to deliver to the lessor one-eighth of the oil, and to pay one hundred dollars per year for the gas from each gas well drilled on the premises, the product from which is marketed and used off the premises; said payments to be made on each well within one year after commencing to use the gas therefrom and yearly thereafter while gas from said well is so used. A failure of the lessee to make any one of said payments when due, or within six months thereafter, the lessor serving written notice by mail or otherwise on the lessee demanding said deferred payment, may declare this lease null and void, as to the well or wells upon which pay has been neglected, and no longer binding on either party thereto. The lessor to have the right to use the premises for tillage or grazing purposes, except such parts as are necessary for such mining and piping purposes and right of way. The lessee to have the right to remove any machinery, buildings or fixtures placed on the premises by him, and to sublet. The lessee to commence mining operations within one year from the execution of the lease. About Oct. 6, 1902, the lessee went upon the premises with a portable drilling rig and commenced drilling, and during that month drilled a well to the depth of about 466 feet when some gas was found but not in commercial quantity. The well was then cased and the drilling rig removed to an adjoining property, a pipe was laid from the well to this adjoining property and the gas was there used for drilling by the lessee for some time during the fall of 1902. In February or March, 1903, the lessee returned to the premises with a portable rig and cleaned out the well, replaced the casing and then moved the rig off, leaving the casing in the well. About Oct. 15, 1903, the lessee selected a site

for another well, and hauled and placed on the land some timbers for a standard derrick. Dec. 14, 1903, Hamilton mailed to Phillips the following notice (omitting date, address and signature) : "You are hereby notified that in view of the fact that you have failed to comply with the terms of the oil land lease executed by me to you on the 4th day of August, 1902, in this : that one year has elapsed since the execution of said lease and you have not commenced mining operations on the land designated therein, I hereby rescind and cancel the same." On Dec. 24, 1903, Phillips assigned the lease to his co-plaintiff in error, Douglas Oil Fields, a corporation, which at the time of the assignment had knowledge of the attempted cancellation of the lease by the notice of Dec. 14. On March 26, 1904, Douglas Oil Fields moved a drilling rig onto the premises and commenced drilling the second well and continued drilling until about April 28, 1904, when they had the well sunk to the depth of about 388 feet and had put in 360 feet of eight-inch casing and were preparing to sink it deeper, when they were stopped from further work on the premises by the temporary injunction in this case, which was issued May 27, 1904. The leased lands are situated in an undeveloped field supposed to contain oil and gas; but it does not appear that there were any wells in the vicinity producing either in commercial or paying quantities or that the leased lands were being drained of either by wells on adjacent lands. It is admitted by the lessor in his testimony that the notice of Dec. 14, was the only notice given to the lessee or his assigns that he claimed a forfeiture or cancellation of the lease, until about the time of the commencement of this action, when he locked the gates on the premises and forbid the lessee from entering the premises or doing further work thereon.

The contentions of the lessor are, that by the terms of the lease, the lessee was under obligation to commence operations for oil and gas upon the premises within one year from the execution of the lease and to continue such operations diligently and in good faith until the oil or gas thereunder

had been fully developed, or it had been effectually demonstrated that oil and gas was not to be found thereunder in commercial quantities, and that any cessation of such prospecting would work a forfeiture of the lease and authorize its cancellation. It is alleged that after the lessee had bored one well on the land which did not produce oil or gas in commercial quantities, he abandoned operations on the land, and that thereafter, on Dec. 14, 1903, the lessor notified the lessee that he elected to rescind and cancel the lease; and he claims that all rights of the lessee and his assigns under the lease have been forfeited. The lease contains no express covenant or stipulation for diligence in the matter of exploration, or any requirement as to the amount of work to be done or the number of wells to be drilled within any stated period of time or at all. But it is admitted in argument—and we think rightly so—that the lease does contain an implied covenant that the work of prospecting and development should continue, after the expiration of the year within which the lessee was to conmmence operation, with reasonable diligence. It is evident that the purpose of the lease was to explore the premises, and if oil or gas was found therein in paying quantities, to produce and market the same for the mutual benefit of both parties. Such being the case, it was the duty of the lessee, under the implied covenant contained in the lease, to proceed with reasonable diligence to prospect and develop the premises, having due regard to his own interest and those of the lessor. It was likewise the duty of the lessor to allow a reasonable time to the lessee to do so before he could claim a forfeiture, or right to cancel the lease, if he had any such right under the terms of the contract. The contention of counsel for the lessor that any cessation of work or the temporary removal of the drilling machinery from the land would work a forfeiture of the lease, cannot be sustained. The lease contains no such express provision and the implied covenant requires reasonable diligence only. No doubt the parties might have so stipulated in their contract, but they did not do so, and it is not the

APR. 1908]    PHILLIPS ET AL. V. HAMILTON.    51

duty of the court to make contracts for the parties, but to
interpret the language they have used and to construe the
contract they have entered into according to established legal
principles.    We think the proper construction of the con-
tract under consideration is, that by the express terms of the
contract the lessee was required to commence operations on
the land within one year from the execution of the lease,
and, by the implied covenant, to continue such operations
with reasonable diligence thereafter.    Counsel for the lessor
seems to confuse the rights of a lessor to a cancellation of a
lease because it has been forfeited by the lessee by a breach
of some covenant which the lessee is bound to perform,
with the rights of a lessor upon abandonment by the lessee;
and it is urged that after boring the first well, the lessee
abandoned the premises and thereupon the lease was term-
inated.    "Abandonment is the relinquishment or surrender of
rights or property by one person to another; it includes both
the intention to abandon and the external act by which
the intention is carried into effect."    (1 Enc. Law. 1.)    "In
determining whether one has abandoned his property or
rights, the intention is the first and paramount object of in-
quiry;  for there can be no abandonment without the inten-
tion to abandon."    (1 Cyc. 5.)    In the present case the
claim that the lease was forfeited by abandonment is wholly
without support in the evidence, as it clearly appears that
there was no such intention on the part of the lessee or
his assigns, but on the contrary, that such was not the in-
tention, and they did in fact return and were at work on
the land when this suit was commenced.    A lessee may,
however, forfeit his rights under a lease by a breach of some
covenant which he is required to keep or perform, which
breach may occur either intentionally or unintentionally on
his part, or through his neglect or inability to keep or per-
form the same.    The breach of the contract which it is here
claimed worked a forfeiture of the lease and entitled the
lessor to its cancellation, is the alleged failure of the lessee
to keep and perform the implied covenant to diligently con-
tinue the work of exploration for oil and gas.    It is at

least doubtful if a breach of such an implied covenant would warrant the court in decreeing a forfeiture when the lease does not expressly so provide and when it does provide that the lease may be forfeited in whole or in part for another cause therein specifically stated. (Law Relating to Oil and Gas, by Thornton, Sections 156-7, and cases cited in notes.) However, we deem it unnecessary to decide that question as we are satisfied that the evidence in this case is insufficient to sustain the claim that there was such a failure to diligently continue the work of prospecting and development as would warrant a cancellation of the lease for that reason. In the case of Brewster v. Lanyon Zinc Co., 140 Fed. 801, in considering what constitutes reasonable diligence in such cases, Judge Van Devanter said: "The large expense incident to the work of exploration and development, and the fact that the lessee must bear the loss if the operations are not successful, requires that he proceed with due regard to his own interests as well as those of the lessor. * * * * Whether or not in any particular instance such diligence is exercised depends upon a variety of circumstances, such as the quantity of oil and gas capable of being produced from the premises, as indicated by prior exploration and development, the local market or demand therefor, or the means of transporting them to market, the extent and results of the operations, if any, on adjacent lands, the character of the natural reservoir —whether such as to permit the drainage of a large area by each well—and the usages of the business. Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee, is what is required." In the case before us, the work that was being done, not only on the leased land but in the vicinity, was in the nature of prospecting. The lessee commenced operations within the time required by the lease, and he and his assigns, within less than one year from the time they were required to commence work, had drilled two wells to considerable depth, and at the time suit was commenced were at work and had

made preparations to sink the second well to a much greater depth, and, as shown by the evidence, had expended within that time for machinery and materials, and for labor upon the premises over $5,000. It also appears from the testimony of the lessor that, except the notice of Dec. 14, he made no complaint or objection to the work that was being done, nor did he have any conversation with them on the subject. We think that, under a proper construction of the contract, the evidence in this case is insufficient to show a lack of good faith on the part of the lessee or his assigns, or a failure to exercise reasonable diligence in the work of prospecting and drilling for oil and gas on the leased premises and that the district court erred in awarding the exclusive possession of the premises to the defendant in error and in enjoining the plaintiffs in error from further operations under the lease. For the reasons above stated, the judgment of the district court is reversed and the cause remanded to the district court for a new trial or such further proceedings as are deemed proper not inconsistent with this opinion.

*Reversed.*

POTTER, C. J., and CARPENTER, District Judge, concur.

HON. CHARLES E. CARPENTER, Judge of the Second Judicial District, sat in the place of SCOTT, Justice, who, as District Judge, had presided at the trial below.