Robert C. WILKOSKE and Nona
N. Wilkoske, Appellants
(Plaintiffs),

v.

Lonny D. WARREN, Appellee
(Defendant).

No. 93–202.

Supreme Court of Wyoming.

May 27, 1994.

Michael H. Reese of Wiederspahn, Lummis & Liepas, P.C., Cheyenne, for appellants.

Peter G. Arnold of Riske & Arnold, P.C., Cheyenne, for appellee.

MACY, Chief Justice.

Appellants Robert Wilkoske and Nona Wilkoske appeal from the district court's order which denied their requests for a declaratory judgment and an injunction to prohibit Appellee Lonny Warren from using a fenced easement which crossed his land.

We affirm.

The Wilkoskes present the following issues:

1. Whether a specific grant in a deed of an *exclusive* easement excludes even the servient estate owner from the easement area as a matter of law?

a) What is the nature and scope of this *exclusive* easement?

b) Whether the Court below erred in construing the nature and scope of the *exclusive* easement?

2. Whether the Court below was clearly erroneous in rendering a decision with respect to certain findings of fact?

On December 11, 1959, the United States of America (hereinafter the Government) filed a complaint in the United States District Court for the District of Wyoming to condemn land located in Laramie County to be used for Atlas D missile sites. The United States District Court entered a final judgment which gave the Government a fee simple interest in Tract A for a missile site.

*United States of America v. 493.07 Acres of Land,* No. 4331 Civil (D.Wyo. Sept. 23, 1960).

The final judgment also conveyed to the Government an easement which was approximately 200 feet wide and located completely within Tract B. The easement contained 8.21 acres and divided Tract B into two parcels. The northeastern parcel comprised twenty acres and could not be legally accessed from the remainder of Tract B without crossing the easement. The Government erected a fence around the easement and constructed a paved road on the easement from Wyoming Highway 217 to its missile site which was located on Tract A. The following map illustrates the approximate location of the easement:

The Wilkoskes purchased Tract A after the missile program had been phased out, and Mr. Warren subsequently purchased Tract B.

The final judgment described the scope of the easement:

(c) A perpetual and assignable exclusive easement and right of way to locate, construct, operate, maintain, repair, patrol, replace and/or remove an access road and overhead and/or underground electric power lines and overhead and/or underground communication lines, in, upon, under, over and across Tract [B], together with the right to trim, cut, fell and remove therefrom all trees, underbrush and obstructions and any other vegetation, structure or obstacles within the limits of the right of way; and the right to prohibit ingress and egress on and over said tract for the purpose of exploring, testing, developing, producing and removing any minerals, including gas and oil, from the surface of said tract; subject, however, to the existing easements for public roads and highways, public utilities, railroads and pipelines.

In September 1992, the Wilkoskes sought a declaration that they had a right to exclude Mr. Warren from the easement and an injunction preventing him from removing either the fence located around the easement or the locked gate located on the western boundary of the easement. Mr. Warren filed a counterclaim seeking the right to use the easement and to cross it to gain access to the northeastern twenty acres of his tract. After a bench trial, the district court ruled that the Wilkoskes could not exclude Mr. Warren

**1258**

from the easement area. The district court ordered the Wilkoskes to give Mr. Warren a key to the locked gate and ruled that Mr. Warren was entitled to remove or relocate the fence at his own expense as long as the removal or relocation did not interfere with the Wilkoskes' rights in the easement.

The Wilkoskes claim that the language which created the easement prohibits Mr. Warren from using the easement. They contend that the term "exclusive easement" as used in the United States District Court's final judgment "operates to create an interest in [the] land of [Mr. Warren] that excludes everyone, including the owner of the servient estate, from the easement area." We disagree.

> The grant of an exclusive easement conveys unfettered rights to the owner of the easement to use that easement for purposes specified in the grant to the exclusion of all others. Because an exclusive grant in effect strips the servient estate owner of the right to use his land for certain purposes, thus limiting his fee, exclusive easements are not generally favored by the courts.

*Latham v. Garner*, 105 Idaho 854, 673 P.2d 1048, 1050 (1983). Merely using the word "exclusive" when creating an easement is not, in and of itself, sufficient to preclude use by the owner of the servient estate. 673 P.2d at 1051. Language which creates an easement does not exclude the owner of the servient estate " 'in the absence of a clear indication of such an intention.' " *Bard Ranch Company v. Weber*, 557 P.2d 722, 730 (Wyo.1976) (quoting *City of Pasadena v. California–Michigan Land & Water Co.*, 17 Cal.2d 576, 110 P.2d 983, 985 (1941) (en banc)).

The final judgment entered by the United States District Court in the condemnation proceedings described the taking as being a "perpetual and assignable exclusive easement and right of way"; it did not describe the taking as being a fee simple estate. If the United States District Court had intended to condemn a fee simple interest in the land, it could easily have used the term "fee simple" instead of the term "easement." The final judgment also did not indicate an intent to award additional compensation for the right to exclude the owner of the servient estate. *See, e.g., Demetria Sifuentes v. United States*, 168 F.2d 264, 267–68 (1st Cir.1948) (remanding for findings when the District Court's judgment failed to expressly indicate an award of compensation for the right to exclude servient estate owners).

The language in the final judgment did not clearly indicate an intent to exclude the owner of the servient estate. As a matter of law, Mr. Warren may use the easement as long as he does not interfere with the Wilkoskes' rights in the easement.

Because of our holding, we do not need to address the Wilkoskes' remaining contentions.

Affirmed.