Dale H. MUELLER, Appellant
(Defendant Third Party
Plaintiff),

v.

Richard F. HOBLYN and Gary Hoblyn,
Appellees (Plaintiffs),

Lawrence R. Coffee; Conrad T. Dodson
and Janet R. Dodson, George A. Refior
and Nancy M. Refior, Appellees (Third
Party Defendants).

Richard F. HOBLYN, Appellant
(Plaintiff),

v.

Dale H. MUELLER, Appellee
(Defendant),

George A. Refior and Nancy M. Refior,
Appellees (Third Party Defendants).

Lawrence R. COFFEE, Appellant
(Third Party Defendant),

v.

Dale H. MUELLER, Appellee
(Defendant),

George A. Refior and Nancy M. Refior,
Appellees (Third Party Defendants).

Ralph JOHNSON, Appellant (Intervenor),

v.

Dale H. MUELLER, Appellee (Defendant
Third Party Plaintiff),

Richard F. Hoblyn and Gary Hoblyn,
Appellees (Plaintiffs),

Lawrence R. Coffee; Conrad T. Dodson
and Janet R. Dodson, George A. Refior
and Nancy M. Refior, Appellees (Third
Party Defendants).

Nos. 94–1 to 94–4.

Supreme Court of Wyoming.

Dec. 15, 1994.

501

John W. Pattno, Gusea, Pattno & White, Cheyenne, Philip White, Jr., Laramie, for Dale H. Mueller.

* Retired July 6, 1994.

John M. Walker, Hickey & Evans, Cheyenne, for Lawrence R. Coffee.

Donald E. Miller, Cheyenne, for Richard F. Hoblyn and Gary Hoblyn.

John B. Rogers and Rachel R. Rouse, Rogers, Blythe & Lewis, Cheyenne, for Ralph Johnson.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY** and TAYLOR, JJ.

TAYLOR, Justice.

The right to use an easement is at issue in these consolidated appeals. The owners of the dominant estate filed an action against the owner of the servient estate to quiet title to the easement. The owners of the dominant estate claimed they had been denied use of the easement. The owner of the servient estate maintained the entire easement had been lost by adverse possession. Using a variety of procedural means, other present and former owners of dominant estates also became parties to this action. After a bench trial, the district court determined that only a small portion of the easement near a water well had been terminated by adverse possession.

We affirm in part and reverse in part.

## I. FACTS

In 1963, Herbert J. Engleman and Glenys G. Engleman (Englemans) owned a single undivided tract of property in Laramie County, Wyoming. The western boundary of the property had access to Yellowstone Road, a highway north of the City of Cheyenne. On July 15, 1963, the Englemans conveyed a parcel of land within their tract to REB, Inc. (REB). The parcel of land REB purchased was located east of Yellowstone Road.

The Englemans also conveyed an easement to REB to provide access to Yellowstone Road. The easement gave REB the right to use a private road to travel across the parcel of land which the Englemans owned. The recorded instrument contained a legal description of the property owned by the Englemans and the property owned by REB,

** Chief Justice at time of oral argument.

but it did not describe, with particularity, the location of the easement:

NOW, THIS INDENTURE WITNES-SETH That, in pursuance of the said agreement and for valuable consideration, the [Englemans], their heirs and assigns, do hereby grant to [REB]:

Full and free right for [REB], its tenants, employees, visitors and licensees, in common with all others having the like right, at all times hereafter, with or without vehicles of any description, for all purposes connected with the use and enjoyment of the said land of the [Englemans] for whatever purposes the said land may be from time to time lawfully used and enjoyed, to pass and re-pass along the said private road, which shall be not to exceed 20 feet in width, and which shall be fenced by [REB], for the purpose of going from the nearby highway to [REB's] said property or vice-versa.

TO HAVE AND TO HOLD the said easement for ingress and egress hereby granted under [REB], its successors and assigns, as an appurtenance to the said land of [the Englemans] and every part thereof.

On April 21, 1969, the Englemans transferred title to their remaining parcel of land to Henry Dale Mueller and Jean Louise Mueller (Mueller). The conveyance expressly stated that Mueller took the property: "Subject to easements of record." At the time Mueller purchased this parcel of land, access to the REB property was customarily obtained by traveling down a dirt driveway which was located outside the fenced northern boundary of Mueller's property.

On September 21, 1979, REB sold a parcel of the land the corporation had acquired from the Englemans to a predecessor-in-interest of George A. Refior and Nancy M. Refior (Refiors). The conveyance transferred all of REB's rights in that parcel of land, including a right to use the easement. The easement was described, with particularity, as including the northern twenty feet of the property Mueller had purchased from the Englemans:

The north 20 feet of S1/2NW1/4; the north 20 feet of SW1/4NE1/4 and the west 20

feet of the north 338.8 feet of SE1/4NE1/4 of said Section 30.

On October 30, 1987, the Refiors conveyed their interests in the parcel of land by warranty deed to Lawrence R. Coffee (Coffee).

On February 27, 1981, REB sold another parcel of the land formerly owned by the Englemans to a predecessor-in-interest of Ralph Johnson (Johnson). This conveyance also transferred a right to use the easement described, with particularity, as including the northern twenty feet of Mueller's property:

Including an easement for ingress and egress for above portion described as follows: the North 20 feet of S1/2NW1/4, the North 20 feet of SW1/4NE1/4 and the West 310 feet of the North 20 feet of the SE1/4NE1/4, Section 30, T. 16 N., R. 66 W., 6th P.M., Laramie County, Wyoming.

On October 1, 1986, Johnson executed a contract for deed to convey his interests to Richard F. Hoblyn and Gary D. Hoblyn (collectively Hoblyn).

Coffee and Hoblyn both experienced difficulty using the existing dirt driveway to access their properties. Snow drifts sometimes blocked portions of the nearly mile-long driveway during the winter months. Finally, in 1990, Coffee had the land surveyed. The survey disclosed that, except for a small overlapping portion, the route of the dirt driveway did not correspond with the easement. Coffee and Hoblyn individually requested permission to use the easement from Mueller. Mueller refused. Mueller claimed that no one had ever used the easement and he was using the land burdened by the easement for agricultural crops and a water well.

On July 11, 1991, Hoblyn filed an action against Mueller in district court to quiet title to the easement. Mueller responded with a counterclaim against Hoblyn and a third-party complaint against Coffee and other landowners who allegedly had a right to use the easement in their chain of title. Johnson was granted permission to intervene in the action. After almost two years of proceedings, Coffee filed a third-party complaint against the Refiors alleging they had a duty to indemnify Coffee for his expenses in defending the title to the easement.

On May 24, 1993, the district court conducted a trial on all the various claims of the parties. The district court found that in 1977, Mueller had drilled a water well within the easement boundaries. The district court concluded that by drilling the water well, Mueller terminated by adverse possession a two-hundred foot long portion of the easement despite the fact the well had never been used for irrigation purposes as Mueller had intended. All other claims for relief were denied. Multiple appeals were filed challenging the district court's decision.

## II. DISCUSSION

The findings of fact made by the district court will not be set aside unless clearly erroneous. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). " 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The district court's conclusions of law are not binding upon this court and are reviewed *de novo*. *Hopper*, 861 P.2d at 538; *Powder River Oil Co. v. Powder River Petroleum Corp.*, 830 P.2d 403, 407 (Wyo.1992).

An "easement" is an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property. Restatement of Property § 450(a) (1944). *See also* Black's Law Dictionary 509 (6th ed. 1990). This court has recognized that an easement has five essential qualities: first, an easement is incorporeal or without material nature; second, an easement is imposed upon corporeal property, not the owner of the property; third, an easement confers no right to participate in the profits arising from the property; fourth, an easement is imposed for the benefit of corporeal property and; fifth, there must be two distinct estates, the dominant estate, the one to which the right belongs, and the servient estate, the one upon which the obligation is imposed. *Belle Fourche Pipeline Co. v. State*, 766 P.2d 537, 543 (Wyo.1988) (quoting *Day v. Buckeye Water Conservation &*

*Drainage Dist.*, 28 Ariz. 466, 237 P. 636, 640 (1925)).

The incorporeal nature of an easement corresponds with the slight degree of control the easement holder has over the servient estate. Restatement of Property, *supra*, at § 450 cmt. c. The owner of the servient estate retains all rights to the property except as limited by the easement.

> The fee or leasehold owner of the land to which an easement applies retains all the incidents of ownership in the land that do not contradict the particular rights of the easement holder. Thus if the easement holder has the right to cross over the land of another at a certain point, the owner of the underlying property ordinarily has the right to use the exact same part of the property in any way that does not prevent the easement holder from the actions which the easement grants.

7 *Thompson on Real Property*, § 60.02(d) at 394 (Thomas ed. 1994). As a matter of law, therefore, the owner of the servient estate may use the land burdened by the easement as long as the use does not interfere with easement holder's rights. *Wilkoske v. Warren*, 875 P.2d 1256, 1258 (Wyo.1994).

The use of the servient estate is at the core of this dispute. Mueller admits that from 1963 to 1990, all parties believed that the location of the dirt driveway corresponded to the easement the Englemans granted REB. During this same time, however, Mueller maintains that his boundary fencing, agricultural use of the servient estate and drilling of a water well have prevented use of the easement. Under these circumstances, Mueller argues the district court erred in finding that the rights of the owners of the dominant estates to use only a portion of the easement had been terminated by adverse possession. Instead, Mueller asserts that the entire easement has been extinguished under one of several alternative theories.

Coffee and Hoblyn and their predecessors-in-interest admit that they have obtained access to their properties by traveling over the dirt driveway north of Mueller's property line. Coffee and Hoblyn maintain, however, that their rights to use the easement could

not be terminated until they made a demand upon Mueller to use the land. Under these circumstances, Coffee and Hoblyn argue that the district court erred in finding that a portion of the easement had been terminated by adverse possession. Instead, Coffee and Hoblyn assert that they have the right to use the easement for a private road. Our review discloses that the right to use the easement has not been terminated by operation of law.

In 1963, the Englemans granted an easement to REB for access to their parcel of land by a private road. The Englemans' parcel of land became the servient estate, burdened by the easement. The REB property became the dominant estate, benefitted by the easement.

■ In 1969, when Mueller purchased the Englemans' property, he took with record notice of the existence of the easement, if not of the exact location. Presently, Wyoming law requires specific descriptions for easements recorded after May 20, 1981. Wyo. Stat. § 34–1–141(a) (1990). *See* Vance T. Countryman & Drew A. Perkins, Comment, *Death Of The Dark Ages? The Troubled Law Of Easements In Wyoming*, XXVII Land and Water L.Rev. 151, 169–71 (1992). However, the easement granted by the Englemans is valid and enforceable under our prior law. *See Carney v. Board of County Com'rs of Sublette County*, 757 P.2d 556, 561 n. 3 (Wyo.1988).

■ In 1979, when REB first sold a parcel of the land the corporation had acquired from the Englemans, REB effectively subdivided its holdings. Subdivision means that each of the parts of the dominant estate succeed to the privileges of use of the servient estate authorized by the easement. Restatement of Property, *supra*, § 488.

> "The fact that the dominant estate is divided and a portion or portions conveyed away does not, in and of itself, mean that an additional burden is imposed upon the servient estate. The result may be that the **degree** of burden is increased, but that is not sufficient to deny use of the right of way to an owner of a portion so conveyed."

*Hayes v. Aquia Marina, Inc.*, 243 Va. 255, 414 S.E.2d 820, 823 (1992) (*quoting Cushman Virginia Corp. v. Barnes*, 204 Va. 245, 129 S.E.2d 633, 640 (1963)) (emphasis in original). *Accord Westland Nursing Home, Inc. v. Benson*, 33 Colo.App. 245, 517 P.2d 862, 867 (1974).

■ The easement granted by the Englemans provided for unlimited use for ingress and egress. Subdivision, therefore, did not create an additional burden on the easement since the use remained the same. Restatement of Property, *supra*, § 488. We hold that while the degree of the burden was increased, the easement was not terminated when REB subdivided its parcel of land. *Westland Nursing Home, Inc.*, 33 Colo.App. 245, 517 P.2d at 867; *Hayes*, 414 S.E.2d at 823.

■ Easements may be terminated by abandonment. Abandonment occurs when one person relinquishes or surrenders rights or property to another. *Phillips v. Hamilton*, 17 Wyo. 41, 51, 95 P. 846, 848 (1908). Abandonment of an easement requires an intentional relinquishment indicated by conduct which discloses the intention to surrender the right to use the land authorized by the easement. *Carney*, 757 P.2d at 562–63; Restatement of Property, *supra*, § 504.

■ There is no evidence of an intentional relinquishment by Coffee, Hoblyn or their predecessors-in-interest of their rights to use the easement. *Phillips*, 95 P. at 848. For example, there is no evidence the owners of the dominant estates ever constructed any permanent buildings or structures to obstruct the route of the easement onto their lands. Restatement of Property, *supra*, § 504 cmt. e. Nevertheless, Mueller maintains that use by the owners of the dominant estates of the dirt driveway from 1963 to 1990 should have terminated the easement. We disagree.

■ Abandonment requires more than simple nonuse of an easement, no matter how long the period of nonuse. Restatement of Property, *supra*, at § 504 cmt. d. In *Harrison v. State Highways and Transp. Com'n*, 732 S.W.2d 214, 221 (Mo.App.1987), the court found an easement to remove fill dirt for use in highway construction was not abandoned even though it had not been used in twenty-

four years. "The question of abandonment is largely one of intention, and intention to abandon must be proved and it may be inferred only from strong and convincing evidence." *Id.* at 221.

The court in *Richards Asphalt Co. v. Bunge Corp.,* 399 N.W.2d 188, 192–93 (Minn. App.1987) determined that an easement for a railroad spur was not abandoned despite nonuse for sixteen years. During this period, the owner of the dominant estate had obstructed the railroad tracks with four to seven feet of fill dirt to control periodic flooding. *Id.* at 190. The court, however, found that placing the fill dirt and leaving it for sixteen years did not disclose a permanent intent to abandon the easement. *Id.* at 193. "A claim of abandonment can be upheld only where nonuse is accompanied by affirmative and unequivocal acts indicative of an intent to abandon and is inconsistent with the continued existence of the easement." *Id.* at 192.

Coffee, Hoblyn and their predecessors-in-interest did not attempt to make use of the entire easement across Mueller's property for twenty-seven years. However, the right to use the land was not relinquished by mere nonuse. *Richards Asphalt Co.,* 399 N.W.2d at 192–93; *Harrison,* 732 S.W.2d at 221. The mere nonuse of the easement did not disclose an affirmative and unequivocal intent to abandon the easement. Restatement of Property, *supra,* at § 504 cmt d.

The use of an alternative access route from 1963 to 1990 also does not establish an intent to abandon the easement. In *Jackvony v. Poncelet,* 584 A.2d 1112, 1117 (R.I.1991), the owner of the dominant estate had two available routes to access his property. The court determined that despite the fact the alternative route was more convenient, the owner of the dominant estate retained the right to use and enjoy an easement giving him access to another route. *Id.* The court reiterated that abandonment would only be found when there is an expression of an intent to abandon the easement. *Id.*

While Coffee and Hoblyn did make use of another means of access, the failure to use the easement does not mean the purpose of the easement ceased to exist. *Crabbe v. Veve Associates,* 150 Vt. 53, 549 A.2d 1045, 1048

(1988). The easement holders retained the right to use the easement even if they used an alternative route. *Jackvony,* 584 A.2d at 1117. We hold that Coffee, Hoblyn and their predecessors-in-interest did not abandon the easement granted by the Englemans. *Carney,* 757 P.2d at 562–63.

▮▮▮ Detrimental reliance on the conduct of the owners of a dominant estate may also result in a termination of the easement. Restatement of Property, *supra,* at § 505 acknowledges that the owner of a servient estate may seek to terminate an easement by estoppel:

> An easement is extinguished when action is taken by the owner of the servient tenement inconsistent with the continued existence of the easement, if
>
> (a) such action is taken in reasonable reliance upon conduct of the owner of the easement; and
>
> (b) the owner of the easement might reasonably have foreseen such reliance and the consequent action; and
>
> (c) the restoration of the privilege of use authorized by the easement would cause unreasonable harm to the owner of the servient tenement.

Mueller, however, failed to make any showing of conduct by Coffee, Hoblyn or their predecessors-in-interest that he reasonably relied upon to his detriment. *Squaw Mountain Cattle Co. v. Bowen,* 804 P.2d 1292, 1297 (Wyo.1991). There is no evidence in the record that the owners of the dominant estates ever intentionally expressed their permission for Mueller to take any actions inconsistent with the continued existence of the easement. Restatement of Property, *supra,* at § 505 cmt. c. We hold that the easement was not terminated by estoppel.

▮▮▮ Finally, adverse possession for the statutory period of ten years may result in the termination of an easement. Wyo.Stat. § 1–3–103 (1988). To terminate an easement by adverse possession, the owner of the servient estate must take an action that would be permitted only if the easement did not exist.

An easement is extinguished by a use of the servient tenement by the possessor of it which would be privileged if, and only if, the easement did not exist, provided

(a) the use is adverse as to the owner of the easement and

(b) the adverse use is, for the period of prescription, continuous and uninterrupted.

Restatement of Property, *supra*, at § 506.

■ This court has identified several elements which must be satisfied to establish adverse possession of land. The party claiming adverse possession must show actual, open, notorious, exclusive and hostile possession of another's property for ten years under a claim of right or color of title. *Doenz v. Garber*, 665 P.2d 932, 935 (Wyo.1983); *Rutar Farms & Livestock, Inc. v. Fuss*, 651 P.2d 1129, 1132 (Wyo.1982). The party claiming adverse possession must have acted with the intent to assert an adverse claim against the true owner. *Gray v. Fitzhugh*, 576 P.2d 88, 90 (Wyo.1978).

■ The elements of adverse possession of land are very similar to the elements necessary to establish adverse possession of an easement. There is, however, an analytical distinction between the two categories of adverse possession. The owner of the servient estate claiming adverse possession of an easement already has the right to possess and use the land so long as that use is not inconsistent with the easement. *WYMO Fuels, Inc. v. Edwards*, 723 P.2d 1230, 1236 (Wyo.1986). Therefore, the owner of a servient estate must prove the use of the servient estate made during the period of adverse possession is sufficiently hostile and inconsistent with the use permitted by the easement.

To extinguish an easement over (or use of) the servient tenements, the servient tenement owner must demonstrate a visible, notorious and continuous adverse and hostile use of said land which is inconsistent with the use made and rights held by the easement holder, not merely possession which is inconsistent with another's claim of title.

*Estojak v. Mazsa*, 522 Pa. 353, 562 A.2d 271, 275 (1989). *Accord Abbott v. Thompson*, 56 Or.App. 311, 641 P.2d 652, 655 (1982). Just as the creation of an easement by prescription is not favored in the law, the termination of an easement by adverse possession is not favored. *Shumway v. Tom Sanford, Inc.*, 637 P.2d 666, 670 (Wyo.1981).

■ The district court ruled that Mueller's actions in drilling a water well on a portion of the easement terminated by adverse possession the rights held by Coffee and Hoblyn to use a two-hundred foot long portion of the easement. The district court also determined that Mueller had failed to establish his adverse possession of the remainder of the easement. The district court found that Mueller's actions in maintaining boundary fencing or making agricultural use of the land burdened by the easement were "not sufficient" to terminate the easement by adverse possession.

Mueller maintains the district court erred in ruling that only the portion of the easement around the water well was terminated by adverse possession. Mueller asserts that his use of the land was sufficiently hostile and notorious to terminate the entire easement by adverse possession. Mueller argues that as the owner of the servient estate, he has proven that his use of the land has been inconsistent with the use permitted by the easement.

Coffee and Hoblyn contend that no portion of the right to use the easement has been terminated by adverse possession. Coffee and Hoblyn assert that Mueller's actions prior to 1990 were not adverse to their interests because Mueller was permitted to make use of his land until the owners of the dominant estates requested to use the easement. Coffee and Hoblyn argue that Mueller's actions were nothing more than an exercise of his right as the landowner to use and develop his property. We agree that Mueller's actions in maintaining boundary fencing, growing various crops and drilling the water well did not terminate any portion of the easement by adverse possession.

In *Joe Johnson Co. v. Landen*, 738 P.2d 711, 712–13 (Wyo.1987), this court considered a landowner's right to use land burdened by

interests held by another. The landowner declared that he had terminated, by adverse possession, the right to use a natural water reservoir located on his land. *Id.* at 712. The landowner claimed that during a period of over ten years when the reservoir was not being used, he and his predecessor-in-interest had made hostile and notorious use of the land. *Id.* The landowner planted agricultural crops, drilled a water well and installed an irrigation system within the boundaries of the dry reservoir. *Id.* The right to use the reservoir belonged to the holder of a certificate of appropriation. *Id.* When the landowner diverted water away from the reservoir land to protect his crops, the holder of the certificate of appropriation filed a complaint. *Id.* This court determined that the landowner had failed to establish all the necessary elements of adverse possession. *Id.* at 712–13. We held that the landowner had not demonstrated that his uses of the land were separate and exclusive uses which were inconsistent with the right to use the reservoir which belonged to the holder of the certificate of appropriation. *Id.*

Other courts have specifically addressed the rights of the owner of a servient estate to use land burdened by an unused easement. In *Beebe v. Swerda,* 58 Wash.App. 375, 793 P.2d 442, 443–44 (1990), the owner of a dominant estate demanded the right to use an easement for a private road. The owner of the servient estate claimed the previously unused easement had been terminated by adverse possession. *Id.* 793 P.2d at 446. The court found that despite the improvements the owner of the servient estate had made to the land, the easement was not terminated by adverse possession. *Id.* 793 P.2d at 447. "This right of the servient estate owner to the use of the property covered by the easement during periods when the easement is not being used means that the use of the area covered by the easement is not adverse to the owner of the dominant estate." *Id.* The court affirmed a lower court order that required the owner of the servient estate to remove his improvements within thirty days of the time the dominant estate owner sought to use the easement. *Id. See also City of Edmonds v. Williams,* 54 Wash.App. 632, 774 P.2d 1241, 1244 (1989)

(holding easement was not terminated by adverse possession when the owner of the servient estate constructed a fence across an unused easement).

In *Kolouch v. Kramer,* 120 Idaho 65, 813 P.2d 876, 877 (1991), the Supreme Court of Idaho considered whether the owner of the servient estate had terminated, by adverse possession, the right to use an easement for a private road. The owner of the servient estate had placed six trees down the center of the easement, constructed a fence inside the boundary of the easement, constructed a concrete irrigation diversion system on one end of the easement and placed several large boulders on the easement. *Id.* 813 P.2d at 878. The court determined that when an easement has never been used, the owner of the servient estate had a right to use the land "for any purpose not inconsistent with the purpose reserved in the easement." *Id.* 813 P.2d at 879–80. The court held that the owner of the servient estate had not made adverse or inconsistent use of the land prior to the time the owner of the dominant estate needed to use the easement. *Id.* 813 P.2d at 880.

*Kolouch* builds upon a rule first announced in *Castle Associates v. Schwartz,* 63 A.D.2d 481, 407 N.Y.S.2d 717 (1978). In *Castle Associates,* the court considered whether an unused easement created by a grant in 1903 had been terminated. *Id.* 407 N.Y.S.2d at 719. Seventy-three years later, the owner of the dominant estate demanded the right to use the easement. *Id.* 407 N.Y.S.2d at 720. The owner of the servient estate claimed his actions in fencing the land had terminated the easement by adverse possession. The court considered a variety of precedents and summarized:

> [W]here an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may fence his land and such use will not be deemed adverse to the existence of the easement until such time as (1) the need for the right of way arises, (2) a demand is made by the owner of the dominant tenement that the easement be opened and (3) the owner of the servient tenement refuses to do so.

*Id.* 407 N.Y.S.2d at 723. *See also Armour v. Marino,* 140 A.D.2d 752, 527 N.Y.S.2d 632, 633 (1988) (holding unused easement created by a grant was not terminated by adverse possession despite obstructions by owners of servient estate which included fencing, trees and a garden).

The court in *Spiegel v. Ferraro,* 73 N.Y.2d 622, 543 N.Y.S.2d 15, 17, 541 N.E.2d 15, 17 (1989) recognized the limited nature of the exception to general principles of adverse possession contained in the holdings of *Castle Associates, Armour* and similar cases:

> The theory underlying the exception is that easements not definitively located and developed through use are not yet in functional existence and therefore the owner of the easement could not be expected to have notice of the adverse claim until either the easement is opened or the owner demands that it be opened. It is only at such point, therefore, that the use of the easement by another is deemed to be adverse to the owner and the prescriptive period beings to run * * *.

■ We are persuaded that no portion of the easement granted by the Englemans was terminated by adverse possession. *Joe Johnson Co.,* 738 P.2d at 712–13; *Kolouch,* 813 P.2d at 879–80; *Spiegel,* 541 N.E.2d at 17; *Armour,* 527 N.Y.S.2d at 633; *Castle Associates,* 407 N.Y.S.2d at 723; *Beebe,* 793 P.2d at 447; *City of Edmonds,* 774 P.2d at 1244. The easement has never been developed through use. Therefore, the period of adverse possession began in 1990 when Coffee and Hoblyn demanded the easement be opened and Mueller refused. *Spiegel,* 541 N.E.2d at 17. At that time, Coffee and Hoblyn were first placed on notice that another was claiming actual, open, notorious, exclusive and hostile possession of their property under a claim or right or color of title. *Doenz,* 665 P.2d at 935. This action was filed well before the ten year prescriptive period had run. Wyo.Stat. § 1–3–103. Even if the statutory period had run, Mueller's uses of the servient estate were not adverse to the holders of the unused easement. Restatement of Property, *supra,* at § 506.

■ Prior to 1990, Mueller's use of the land was simply "not inconsistent with the purpose reserved in the easement." *Kolouch,* 813 P.2d at 880. As the owner of the servient estate, Mueller maintained boundary fencing. An easement for a private road which has been "definitively and functionally in existence" may be terminated by adverse possession when access is obstructed for the prescriptive period. *Spiegel,* 541 N.E.2d at 17. However, the maintenance of a fence which obstructs an unused easement does not terminate the easement by adverse possession. *Castle Associates,* 407 N.Y.S.2d at 723.

Mueller also used the land for seasonal cultivation of agricultural crops. This use also was not inconsistent with rights held by the owners of the dominant estates. *Joe Johnson Co.,* 738 P.2d at 712–13; *Kolouch,* 813 P.2d at 880; *Armour,* 527 N.Y.S.2d at 633. The owners of the dominant estates have the right to demand the easement be cleared when they are ready to use it. *Beebe,* 793 P.2d at 447.

Finally, Mueller drilled a water well within the boundaries of the easement. After the water well was completed, Mueller capped it. Mueller maintains he still intends to use the water well for crop irrigation at some point in the future. Drilling a water well, however, was not adverse to the continued existence of this previously unused easement.

The landowner in *Joe Johnson Co.,* 738 P.2d at 712–13 had drilled a water well and installed an irrigation system. Nevertheless, this court determined that those actions were not inconsistent with the rights to use the natural reservoir which belonged to the holder of a certificate of appropriation. *Id.* Similarly, the owner of the servient estate in *Kolouch,* 813 P.2d at 878 constructed an irrigation diversion on a portion of the easement. The court determined, however, that this use did not terminate the easement by adverse possession. *Id.* at 880.

Mueller's use of the servient estate to drill a water well did not terminate the rights of the owners of the dominant estate to use the easement for a private road. Therefore, the district court's finding that a portion of the easement was terminated by adverse posses-

sion was clearly erroneous. *Hopper,* 861 P.2d at 538.

## III. CONCLUSION

From 1963 to 1990, the various landowners failed to develop and use the easement granted by the Englemans. Every landowner took with knowledge of the existence of the easement. However, no one took prudent precautions when purchasing their lands to develop and use the easement. As a result, numerous problems have developed which have pitted neighbor against neighbor in complex litigation. No matter how just the resolution under the law, everyone has suffered.

We affirm in part and reverse in part.

THOMAS, Justice, dissenting.

I cannot agree with the decision in this case according to the majority opinion. I am satisfied the trial court and this court have placed this jurisdiction in the minority with respect to the acquisition of an easement right-of-way by adverse possession. Annotation, *Loss of Private Easement by Nonuser or Adverse Possession,* 25 A.L.R.2d 1265, 1329 (1952). In relying upon *Kolouch v. Kramer,* 120 Idaho 65, 813 P.2d 876 (1991), the trial court and this court have rested upon unstable ground.

*Kolouch* expanded upon *Castle Associates v. Schwartz,* 63 A.D.2d 481, 407 N.Y.S.2d 717 (1978). The Idaho court and this court both ignored the severe limitation placed upon *Castle Associates* by the New York Court of Appeals in *Spiegel v. Ferraro,* 73 N.Y.2d 622, 543 N.Y.S.2d 15, 17, 541 N.E.2d 15, 17 (1989):

A narrow exception to this general rule [an easement created by grant may be extinguished by adverse possession] has evolved with regard to the extinguishment of easements that have not been definitively located through use. In *Smyles v. Hastings,* 22 N.Y. 217, 224, we held that an easement that was not so definitively located through use and which lead to a "wild and unoccupied" parcel, was not extinguished by adverse possession because the owner of the easement had had no occasion to assert the right of way during part of

the prescriptive period. Relying on *Smyles,* the Appellate Division has held that such "paper" easements may not be extinguished by adverse possession absent a demand by the owner that the easement be opened and a refusal by the party in adverse possession (*Castle Assocs. v. Schwartz,* 63 A.D.2d 481, 490, 407 N.Y.S.2d 717; *see also, Powlowski v. Mohawk Golf Club,* 204 App.Div. 200, 198 N.Y.S. 30; *Consolidated Rail Corp. v. MASP Equip. Corp.,* 109 A.D.2d 604, 606, 486 N.Y.S.2d 4, *affd. on other grounds* 67 N.Y.2d 35, 499 N.Y.S.2d 647, 490 N.E.2d 514). In *Castle,* the court held that an easement created by grant as the result of a subdivision, but never located, was not extinguished by adverse possession because the owner of the easement had never demanded that the easement be opened.

Then, following the language quoted by the majority, slip op. at 11, the New York Court of Appeals reversed a holding by the Appellate Division that denied extinguishment of an easement and ruled the case did not fall within the *Castle* exception.

In this case, the trial court found, among other things:

2. That the legal description for the previously described easement by deed is set forth as follows:

"The North 20 feet of S1/2NW1/4; The North 20 feet of SW1/4NE1/4 and the West 20 feet of the north 338.8 feet of the SE1/4NE1/4 of said Section 30, Laramie County, Wyoming."

\*    \*    \*    \*    \*    \*

4. That the above described easement has been fenced off since the Defendant, Dale H. Mueller's purchase of the servient estate on May 21, 1969. In addition, Dale H. Mueller has cultivated the area encompassed by the easement with crested wheat.

5. That in November of 1977, the Defendant, Dale H. Mueller drilled a water well within a portion of the area encompassed within the above described easement. This water well has never become operational.

While the trial court also found Mueller's conduct of fencing off and cultivating the easement was not sufficient to result in forfeiture of the easement by adverse possession, that conclusion is clearly contrary to the rule of adverse possession in vogue in Wyoming, articulated in *Doenz v. Garber*, 665 P.2d 932 (Wyo.1983). The clear implication of *Doenz* is that fencing plus cultivation results in gaining title in fee by adverse possession.

My analysis of *Kolouch* leads me to conclude the Idaho court was reasoning to a decision that ingress and egress to a valuable commercial project should be protected. It would have been well advised to at least acknowledge that it was expanding upon the *ratio decidendi* of *Shelton v. Boydstun Beach Ass'n*, 102 Idaho 818, 641 P.2d 1005 (Ct.App. 1982), by alluding to the record in *Shelton* to incorporate information not contained in the reported decision. *Shelton,* of course, follows the majority rule and affirms a ruling of extinguishment by the trial court.

The product of the majority decision in this case is to adopt as the rule in Wyoming for extinguishment of an easement by adverse possession a very narrowly confined rule in New York as it apparently has been liberalized by the Idaho court. Consequently, the rule of adverse possession for acquiring fee title to land in Wyoming is disparate and quite different from the rule with respect to extinguishing an easement by adverse possession. I can find no logic or justifiable public policy in this departure. To the extent the decision appears to be justified by *Joe Johnson Co. v. Landen*, 738 P.2d 711 (Wyo.1987), my disagreement with the majority in that case is recorded and, at the very least, I would limit it to its unique facts.

In the instant case, the majority reversed that aspect of the trial court's decision which extinguished the easement for 100 feet on the east, west, and south of the well. The trial court's decision in that regard clearly is justified by the majority rule with respect to permanent structures in the claimed easement. Annotation, 25 A.L.R.2d 1265. I would affirm that part of the trial court's decision, but I would reverse the ruling that the balance of the claimed easement had not

been extinguished by adverse possession. The other property owners are not without remedy in Wyoming (*Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287 (Wyo.1991)), and holding that the entire easement has been extinguished avoids the anomaly of requiring an action for a private road to fill in the remaining 200 feet. Furthermore, extinguishment of the entire easement comports with the usual rule in Wyoming with respect to adverse possession.

I would reverse and remand and order the entry of judgment that the entire easement had been extinguished by adverse possession.