## John H. Crabbe, Jr. and Arthur E. Sweeney, Jr. v. Veve Associates

[549 A.2d 1045]

No. 84-506

Present: **Allen, C.J.,\* Hill, Peck and Hayes,\* JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed May 27, 1988

---

\* Chief Justice Allen and Justice Hayes were present for oral argument but did not participate in the decision.

*John C. Fitzpatrick* and *Karen Shingler* of *McNamara & Fitzpatrick*, Burlington, for Plaintiffs-Appellees.

*Robert B. Hemley* and *Norman Williams* of *Gravel, Shea & Wright, Ltd.*, Burlington, for Defendant-Appellant.

**Peck, J.** This dispute centers around defendant's obstruction of certain easements granted to plaintiffs' predecessors in title by the developer of the now abandoned Glendale Park subdivision. Plaintiffs brought an action in the superior court, seeking injunctive relief and damages. The court concluded that the easements had not been extinguished through the abandonment of the subdivision and awarded plaintiffs compensatory and exemplary damages. Defendant appeals; we affirm.

In 1957, a subdivision plat of Glendale Park was filed in the South Burlington land records. The plat depicted residential streets and proposed roads that would provide ingress and egress from the subdivision by linking its streets with Dorset Street. Lots in the subdivision were sold until 1960 when the remaining property was foreclosed upon by a creditor.

In 1977, plaintiffs Crabbe and Sweeney each purchased a subdivision lot that had been sold by the original developer prior to 1960. Both of these lots fronted a partially completed street called Oakwood Drive. Crabbe's deed granted an easement "in, over, and across all streets and roadways" shown on the subdivision plat. The deed to Sweeney granted easements over several specific roadways depicted on the subdivision plat, including Glen Road, which, if constructed, would provide essentially direct access to Dorset Street from Oakwood Drive. In 1977, however, few of the proposed roads had been constructed, and municipal permission to build the roads had long since lapsed. This permission could be reapplied for, but no such plans were apparent at the time of purchase. The only route from Oakwood Drive to Dorset Street was an indirect one involving three streets.

Also in 1977, defendant Veve Associates purchased a large portion of the land originally included in the subdivision. This parcel encompassed the platted Glen Road and other disputed ease-

ments, and defendant immediately began plans to construct apartment buildings that would obstruct these easements. During the permit process, plaintiff Sweeney voiced his objections to the project at a meeting of the South Burlington Planning Commission. At one point before the project was approved, defendant tried to negotiate a purchase of Sweeney's lot, but talks were discontinued after defendant was advised by counsel that the value of plaintiffs' easements was negligible.

The apartment complex was completed by the end of 1978, resulting in obstruction of the Glen Road easement as well as others. The lower court concluded that the blocking of the easements decreased the values of plaintiffs' lots, finding that the fair market value of Sweeney's lot decreased from $23,000 before construction of the apartments to $13,000 after construction and that the fair market value of plaintiff Crabbe's lot decreased from $16,000 to $9,000 over the same period. The court concluded that injunctive relief was inappropriate and awarded compensatory damages in the amounts of $10,000 to plaintiff Sweeney and $7,000 to plaintiff Crabbe. Concluding that the obstruction of the easements would be continuing and permanent, the court also awarded exemplary damages, in the amounts of $15,000 to Sweeney and $15,000 to Crabbe.

In *Clearwater Realty Co.* v. *Bouchard*, 146 Vt. 359, 505 A.2d 1189 (1985), we held that, in certain circumstances, lot purchasers acquire permanent rights to use streets indicated on the subdivision plat. *Id.* at 363-64, 505 A.2d at 1191-92. Defendant urges that *Clearwater* does not apply in situations where a subdivision plan has been abandoned and emphasizes the public policy against control of real property by the "dead hand" of an original owner. Although we agree that the rule espoused in *Clearwater* does not apply to the facts of the instant case, we reach this conclusion on different grounds.

*Clearwater* involved lots sold through deeds that contained specific references to a recorded subdivision plat. The plat depicted a roadway twenty-five feet wide leading from a subdivision access road to Lake Champlain, and plaintiffs sought an injunction against a lot owner's use of the roadway. This Court held for the lot owner, noting the familiar principle that "where lots are sold by reference to a recorded plat, lot purchasers acquire the right to keep open and use roads, streets, highways, and park areas as indicated on the plat. *Id.* at 363, 505 A.2d at 1191. This

implied easement rule is rooted in equitable considerations, and it simply recognizes that the sale of a lot under such circumstances also conveys rights to use the platted roadways and park areas.

Here, in contrast, the deeds executed to plaintiffs include *express* grants of easements - to plaintiff Sweeney over specific platted roadways and to plaintiff Crabbe over all the roadways depicted on the subdivision plat. Although the deeds do refer to the subdivision plat, they do so in the course of granting the express easements. Where a deed to a subdivision lot contains express provisions regarding easements over the subdivision roadways, there is no need for resort to equitable rules. See *Adams v. Peninsula Produce Exchange*, 138 Md. 656, 660, 115 A. 106, 108 (1921); *Werkowski v. Waterford Homes, Inc.*, 30 Wis. 2d 410, 141 N.W.2d 306, 310 (1966). The deeds involved in *Werkowski* and in *Adams* include language very similar to the express grants of easements here, and those cases illustrate the importance of distinguishing between express and implied easements.

■ Defendant argues that easements created solely for purposes of providing access to lots of a subdivision are extinguished when the subdivision plan is abandoned. He concedes that such easements may be preserved as to any lots that have been deeded out prior to abandonment of the subdivision, but only to the extent that the easements are reasonably necessary to the use and enjoyment of those lots. All of the cases cited by defendant, however, involve implied easements, and none of them state the propositions that this Court is urged to endorse. In any event, a real estate developer's abandonment of a subdivision plan cannot alter the property rights of individual lot owners to whom he has already granted easements. See *Brooks v. Voigt*, 224 Md. 47, 51, 166 A.2d 737, 739 (1961); *Adams*, 138 Md. at 660, 115 A. at 108.

Defendant notes that courts in other jurisdictions have held that an easement granted for a particular purpose is extinguished as soon as the purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment. See, e.g., *URS Corp. v. Ash*, 101 Ill. App. 3d 229, 236, 427 N.E.2d 1295, 1300 (1981). This Court has applied an analogous, though much more limited, rule in a case where an easement explicitly reserved the right to a particular view from an existing house; because the house was later moved to a location from which the view could not be maintained under any circumstances, we held that the easement was extin-

guished. *Hopkins the Florist, Inc.* v. *Fleming*, 112 Vt. 389, 393, 26 A.2d 96, 98-99 (1942).

Here, defendant asserts that the easements at issue were created for the sole purpose of providing access to lots in the subdivision. Defendant maintains that, because the subdivision plan has been abandoned, the purpose of the easements has ceased to exist and that the easements have been extinguished. In general, we think that the rule regarding extinguishment by cessation of purpose should be applied only where easements are qualified by express limitations. See *Delconte* v. *Salloum*, 336 Mass. 184, 188-90, 143 N.E.2d 210, 213-14 (1957). We need not decide this question, however, because defendant's argument is fundamentally unsound. The easements at issue belong to plaintiffs, not to the subdivision, and the purpose of easements is to provide them with a direct route to and from a public road. Although they have access to the road by means of an alternative, circuitous route, this does not mean that the purpose of the easements has ceased to exist. See *Sabins* v. *McAllister*, 116 Vt. 302, 308, 76 A.2d 106, 109 (1950) (fact that grantee of right of way finds another way more convenient does not deprive him of right of way); cf. *American Oil Co.* v. *Leaman*, 199 Va. 637, 101 S.E.2d 540, 551-52 (1958) (where public road to which an easement gave access was closed, the easement was extinguished by cessation of purpose for which it was granted). Defendant does not argue that plaintiffs themselves have abandoned their easements, and we hold that plaintiffs' rights are viable with respect to the platted roadways at issue.

In the alternative, defendant assigns error to the lower court's award of damages. He first argues that the evidence elicited at trial does not support the court's award of $10,000 in compensatory damages to plaintiff Sweeney and $7,000 to plaintiff Crabbe. The trial court reached these figures after finding that the fair market value of Sweeney's lot was $23,000 before the blocking of the easements and $13,000 after the apartments were constructed. The court found that Crabbe's lot was worth $16,000 before the obstruction of his easements and $9,000 after.

Defendant maintains that the court applied the correct measure of damages but erred in relying on plaintiffs' testimony as to the value of their property. He characterizes this testimony as self-serving and unsupported by sound reasons and bases, and he

contends that the court could have properly relied only upon the testimony of defendant's expert witness.

The owner of real property is competent to testify concerning its value. 12 V.S.A. § 1604; *Shortle* v. *Central Vermont Public Service Corp.*, 134 Vt. 486, 489, 365 A.2d 256, 258 (1976). The weight to be assigned to such testimony is a matter for the trier of fact. *Shortle*, 134 Vt. at 489, 365 A.2d at 258. In cases where the evidence relating to damages is conflicting, the amount to be awarded is properly left to the fact finder, and this Court will not disturb the award if it can be justified upon any reasonable view of the evidence. *Vermont Terminal Corp.* v. *Crane*, 132 Vt. 589, 592, 326 A.2d 158, 160 (1974).

Here, the record includes testimony by plaintiff Sweeney that he purchased his lot in January of 1977 for $12,000, that the value of his lot prior to the blocking of his easements was $35,000, and that this value decreased to $10,000 after the easements were blocked. The record also includes a deposition of plaintiff Crabbe in which he stated that he purchased his lot for $4,000, that the value of his lot was $30,000 before defendant's construction activities, and that this value decreased to $4,000 after construction was complete. On the other hand, defendant's expert witness, a real estate appraiser, opined that obstruction of the easements did not have a measurable effect upon the value of plaintiffs' lots. An expert witness's opinion is not controlling, *Jackson* v. *Jackson*, 139 Vt. 548, 550-51, 432 A.2d 1181, 1182 (1981), and the court was free to assign greater weight to plaintiffs' testimony. After considering all of the evidence, the court arrived at valuation figures that fell between the amounts urged by the parties, and we cannot hold that such a decision was not reasonably justified upon any view of the evidence.

■ Finally, defendant contends that the lower court's award of exemplary damages was inappropriate and without legal foundation. He begins by arguing that the court failed to find evidence of "actual malice," basing its award instead on the permanent nature of the obstruction. We conclude that, although its reasons were stated ambiguously, the court was correct in its judgment, and we affirm on that basis. See *Vermont Agency of Transportation* v. *Sumner*, 142 Vt. 577, 579, 460 A.2d 446, 447 (1983). Exemplary damages may be assessed where a defendant's conduct manifests actual malice in the form of personal ill will, insult, or reckless or wanton disregard of a plaintiff's rights. *Shortle* v. *Cen-*

*tral Vermont Public Service Corp.*, 137 Vt. 32, 33, 399 A.2d 517, 518 (1979). Here, the trial court concluded that defendant had actual and constructive notice of the existence of the easements and that he proceeded, nevertheless, to build in such a way that the easements were obstructed. Thus, the award of exemplary damages is sustainable on the ground that defendant's conduct evinced wanton disregard of plaintiffs' rights. Cf. *Dean* v. *Arena*, 141 Vt. 647, 650, 450 A.2d 1143, 1145 (1982) (punitive damages award upheld where defendants trespassed willfully and repeatedly despite knowledge of plaintiff's rights).

Defendant maintains further that exemplary damages are inappropriate in cases where a defendant's conduct is based on good-faith reliance on counsel, and he cites authority from other jurisdictions in support of his proposition. However, this point was not argued below, no finding on the issue was requested, and the trial court made no such finding. Therefore, we do not consider the question on appeal.

*Affirmed.*