**Jacques and Therese Lalonde, Raymond and Therese Fichaud, Vivian and Patrick Ferris, J. W. Ruddy, J. A. Lead, D. Dumont and Guy Seguin v. Dennis S. Renaud and Isabelle L. Renaud**

[597 A.2d 305]

No. 86-533

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed December 29, 1989

Motion for Reargument Denied August 15, 1991

*Michael Rose*, St. Albans, for Plaintiffs-Appellees.

*David G. Miller*, St. Albans, for Defendants-Appellants.

**Peck, J.** Defendants appeal from a trial court judgment declaring that a lot to which defendants claimed title was park area, as designated in the developer's subdivision plans. We affirm.

All parties are owners of lots in the so-called Kirk and Fitts development, which was created in 1957 and is adjacent to Lake Champlain in Alburg. Plaintiffs collectively own seven lots in the subdivision, but only plaintiffs Jacques and Therese Lalonde purchased their property from the developers, in 1966. All of the plaintiffs' deeds refer to a map, which the trial court found was recorded[1] and which depicted an area north of lot 10 of the subdivision as a park. The deeds, however, did not expressly refer to a park, nor did the declaration of restrictions in

---

[1] Defendants argue that the map was not "formally" recorded, but do not deny that two versions of the map are present in the Alburg land records at a date contemporaneous with the initial conveyances, and were present at the conveyance to the Lalondes.

any of the deeds expressly prohibit construction in the area designated as a park. Nevertheless, there was no dispute that the area was used and maintained as a park at least since 1966, and the trial court so found.

Ownership of the area north of lot 10 designated as a park remained with the developers until they sold it by quitclaim deed, along with other land, to defendants' predecessors in title in 1977. Defendants purchased the area in 1982, and in 1984 erected a fence between the beach and the grassy portion of the park. When they made it known that they intended to develop the area, the present action ensued.

The trial court concluded that the original lots were sold by reference to a recorded plat indicating a park area and that the purchasers acquired rights in the park. In *Clearwater Realty Co. v. Bouchard*, 146 Vt. 359, 505 A.2d 1189 (1985), we held that where lots are sold with reference to a recorded plat that indicates a park, "lot purchasers acquire the right to keep open and use roads, streets, highways, and park areas as indicated on the plat." *Id.* at 363, 505 A.2d at 1191.

Defendants contend that the trial court erred in disallowing cross-examination of plaintiff James Ruddy aimed at exploring Ruddy's reliance (or lack of reliance) on the existence of the park in purchasing his lot in 1981. The underlying substantive argument would have been that, absent reliance on the plat denominating the park or reliance on the park itself, plaintiffs were not injured by the subsequent development of the lot denominated "park" in the subdivision plan.

■ Defendants misapprehend the nature of the rights created in lot owners who have purchased by reference to a park in a recorded plat. The holding in *Clearwater* sets forth an objective test, granting lot owners rights as a result of purchasing "with reference to" a plat, without adding a requirement of specific reliance on depictions in the plat. In *Clearwater*, we clearly rejected holdings in some jurisdictions that "lot purchasers only acquire an easement over streets or ways which touch their land or which are *necessary* for the use and enjoyment of their property." *Id.* at 363, 505 A.2d at 1192 (emphasis added). We chose instead what is sometimes called the "broad" or "unity" rule (see generally Annotation, *Conveyance with Reference to Plat*, 7 A.L.R.2d 607, 612 (1949)) that "lot owners ac-

quire rights in all roads, streets, parks, and other designated ways shown on the plat map unless a contrary intent is affirmatively shown." *Id.* at 364, 505 A.2d at 1192.[2]

*Clearwater* addressed rights of way, not parks, which might well be considered distinguishable on the basis of a different degree of necessity to the lot owner. We had no occasion in *Clearwater* to consider a third line of cases adopting the "intermediate" or "beneficial enjoyment" rule, under which the extent of the private right is limited to streets, alleys, or parks that are reasonably or materially beneficial to the grantee. See, e.g., *Whitton v. Clark*, 112 Conn. 28, 151 A. 305 (1930). Even if we were to apply the "reasonable benefit" rule in the present case, an inquiry into whether a lot owner is benefited involves an objective test, not one that depends on an owner's specific reliance on what was depicted on the plat map. Moreover, in the present case the findings below were ample to support the conclusion that the park benefited plaintiffs. The court stated:

> There is no doubt that the character of the neighborhood will be adversely affected should the park be no more. What was there (beach and lawn) for all lot owners to use and enjoy will be no more and those lot owners across the road from the park will look out upon a cottage lot should Defendants prevail.

■ ■ Defendants' argument that each present owner of a lot must demonstrate reliance on the map filed in 1957 would effectively limit the beneficiaries of the protections contained in *Clearwater* to the original purchasers from a developer since only these persons are likely to have relied directly on the plat. Subsequent purchasers would be unable to prove such reliance and would lose the right to the park. Such a position is clearly inconsistent with our holding in *Clearwater*.[3] Additionally, it

---

[2] We are not suggesting that *Clearwater* absolutely bars a different analysis in significantly different factual settings. See, e.g., *Tesson v. Porter Co.*, 238 Pa. 504, 86 A. 278 (1913) ("broad" view subject to exception where municipality vacates).

[3] We concluded in *Clearwater* that "[d]efendants, *as successors in title* to the original purchasers of lots 14 and 15, are therefore entitled to use the disputed 25-foot right-of-way." 146 Vt. at 364, 505 A.2d at 1192 (emphasis added). This holding clearly relates present rights to the question of

would, if adopted, undermine the promises made by developers who seek to attract buyers to a subdivision with dedications of common land. Finally, it would create an undue hardship to subsequent purchasers, whose benefits might depend on proof that they had knowledge of and relied on plats filed at the commencement of the development. There is no reason why purchasers who purchased their properties from someone other than the developer should not enjoy all of their predecessors' rights and interests, unless "a contrary intent is affirmatively shown." *Clearwater*, 146 Vt. at 364, 505 A.2d at 1192. Since lack of reliance by plaintiffs on the plat or on the existence of the park would not affect their rights, the court did not err in limiting defendants' cross-examination of plaintiffs on the reliance issue.

■ Defendants next argue that the trial court erred in allowing testimony by a plaintiff as to the statement of one of the original subdividers concerning the latter's intention that the area north of lot 10 remain a park. The testimony about the subdivider's statement of intention was hearsay and should have been excluded, but its admission did not prejudice defendants' case. The plat recorded in 1957 clearly reflected the existence of a park north of lot 10, and there is no dispute that subdivision lots were sold with reference to that plat. The trial court so found, and that finding is not contested on appeal. Defendants argue that the trial court relied exclusively on the hearsay testimony of the subdivider, but the decision itself does not agree with that characterization. The court stated:

> This case is very similar factually [to *Clearwater*]. The Plaintiff's deeds referred to a recorded map. Both the earlier and later recorded maps indicated that the lot here in dispute was a park. Furthermore, the original developers, Kirk and Fitz, did not show any intent to the contrary. It is reasonable to infer that the benefit of a common park on the lake induced Plaintiffs to buy their lots. Therefore, the Plaintiffs have acquired the right to keep open the park area as indicated on the map.

whether predecessors in title purchased with reference to a plat map, without regard to whether present landowners can prove reliance on the original plat depicting the street or park or on the existence of the park itself.

Emphasis in the decision is properly on the plat and the contemporaneous sales with reference to the plat, not on the testimony relating the views of the developers. The plaintiff's hearsay testimony was at most additive and was harmless error.

We have no occasion to consider the trial court's alternative conclusion, that the park was dedicated in 1957. It appears from the record that the "park" is not public property, but rather a park in the sense of land to be held for the benefit of the lot owners in common.[4] Hence, the question of dedication is not essential to this decision. Nor is it necessary to reach plaintiffs' argument on cross-appeal that the trial court should have found a prescriptive easement.

*Affirmed.*

---

[4] The trial decision did not raise, and we do not consider, the ancillary issues that may persist after this decision, such as responsibility for property taxes and maintenance, as well as the scope of allowable activities on the area north of lot 10.