Noble v. Kalanges, No. 878-03 Cncv (Katz, J., Aug. 31, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                        SUPERIOR COURT
Chittenden County, ss.:                                 Docket No. 878-03 CnCv

NOBLE

v.

KALANGES

ENTRY

Some of the plaintiffs in this action bought homes in the Countryside subdivision of the Essex Housing Partnership around 1985 and after. The plat setting out their homesites had been approved by the Essex Planning Commission in May 1984, and was presumably recorded

soon thereafter. It depicted a parcel on the west side of the subdivision, consisting of about 13.8 acres, as "RESERVED ELEMENTARY SCHOOL SITE." Individual homesite deeds all reference the plat. Some Countryside homeowners now seek to enjoin development of that "elementary school site" by defendant.

Immediately to the south of Countryside lies another residential development, Essex Park. Originally, the two were commonly owned by Essex Housing Partnership. Within the Essex Park development a "COMMON OPEN SPACE" parcel was designated, which is apparently 20 acres. The two undeveloped parcels, together, exceeded the open space zoning requirements Essex Junction had for both subdivisions at the time they were created. In 1985, the common grantor Essex Housing Partnership deeded the elementary school site to the school district and included the following language in its conveyance:

> If, at any time, Grantee [the school district], its successors or assigns, shall exercise its option to purchase another parcel of land, said parcel being known and referenced as "Essex Park Common Open Space" in accordance with the terms and conditions of a Purchase Option dated 2/7/85 . . . the lands and premises conveyed herein [the reserved school site] shall revert to the Grantor [Essex Housing Partnership], its successors and assigns, subject to the restriction, however, that said lands and premises shall be forever reserved as common open space for the benefit of the Essex Park Condominium Regimes.

The purchase option referenced in this deed was executed and recorded the same day. It contained recitation of the parties' intent for the 20 acre common open space parcel which including the "school district wish[] to have the option of selecting one of two sites for future school construction." It also contained the following condition:

> This grant shall revert back to the Owner [Essex Housing Partnership] and be forever null and void if either of the following two circumstances should occur: a)Within five years after the completion of the above-mentioned subdivision known as Country Side in the Village, the School District has not commenced construction of an elementary school building to be used for instructional purposes upon the Essex Park Common Open Space; or b) The School District commences construction of an elementary school building to be used for instructional purposes upon the school site [reserved school site] it obtained from Owner by the 2/7/85 Warranty Deed above referenced.  In case of reversion under either a or b, said Common Open Space shall forever remain Common Open Space as is currently required.

Beyond this restriction, the option defined the term "completion" and how notice of it was to be given.  It also dictated that the school district would show its intent to exercise the option by notice to Essex Housing Partnership and receipt of a warranty deed, which the school district and Essex Housing Partnership exchanged in 1992.

In the end, the school district chose neither site, deeded its rights in both properties back to the developers, who then conveyed the elementary school site to defendant.  In 1995, Essex Housing Partnership completed the Countryside subdivision as defined in the deeds and purchase option.  Defendant has now built a house on the school site and plans to construct several others.  The Essex Park "common open space" remains undeveloped.  At least this defendant, who does not own it, asserts that it is truly permanent open space.  These appear to be the relevant facts.  Both sides seek summary judgment.

## Implied Open Space Easement from 1985 Plat

Plaintiffs' first argument is that since their deeds reference the 1985 plat that marked the 13.8 acre site as a "reserved elementary school site," it created an implied easement. In Vermont, an easement or servitude can arise by a deed's reference to a plat marking out certain roads, parks, or similar public uses, even when the deed makes no explicit reference to the right to such features. Clearwater Realty Co. v. Bouchard, 146 Vt. 359, 363–64 (1985); see also 4 J. Backman, Powell on Real Property § 34.06 (1999). Such easements are created because the plat's physical descriptions are in essence incorporated into the deed and promised to the individual buyers, and the court presumes, without the need for actual proof, that the sellers intended and the buyers understood the subdivision property to have such features. Thus, when the purchasers in Clearwater bought their Lake Champlain property, they received a deed in their chain of title that referenced a 1945 plat showing a beach-access easement 25 feet wide. 146 Vt. at 363. Even though there was no proof that purchasers relied or even saw this plat when they bought the property in 1982, the right to the 25-foot easement had been acquired by the original purchaser and passed down through their predecessors in title. This method of establishing such rights goes beyond mere right of ways or other easements that touch or directly affect a certain parcel. As enunciated by the Court, purchasers acquire a right to "all roads, streets, parks, and other designated ways shown on the plat map unless a contrary intent is affirmatively shown." Id. at 364. This is known as the "broad" or "unity" rule of easements implied by reference. Lalonde v. Renaud, 157 Vt. 281, 283–83 (1989).

The question raised by plaintiff's assertion is whether a "reserved

elementary school site" in a plat creates the same kind of third party easement rights that a right of way, a street, or a park would. In Lalonde, the Vermont Supreme Court reaffirmed the principle of Clearwater and expanded its holding, at least in part, to parks. Id. at 284. But, a school site is not a park, a road, or similar public use. If anything, it resembles more of a public dedication since it assigns land to a narrow use which will benefit the public but have varying effects on immediately adjacent property. Schools will tend to be magnets for traffic and youthful disportment. Further they inherently require a very large capital investment to construct. Hence they are uncertain in both outcome and effect. Parks, by contrast, will normally see far less concentrated use, do not depend on the large public investment, and are almost universally seen as an amenity by neighbors. Compare id. ("There is no doubt that the character of the neighborhood will be adversely affected should the park be no more."), with 68 Am. Jur.2d Schools § 82 ("Land dedicated for school purposes may revert to the grantor or dedicator where the purposes of the dedication fail or the land is used for other purposes."). The difference is important because while the two are not mutually exclusive or dependent, they embody different rights. 3 H. Tiffany, The Law of Real Property § 800, at 312–13 (3d ed. 1939 & 2003 Supp.).

An easement for benefits derived by reference to a plat is a private right that only requires plaintiffs to demonstrate, as in this case, that their property references the plat. Id. This right is essentially a legal construct in that it does not require actual proof that purchasers relied upon the plat and presumes the seller/developer intended to give them such rights. Clearwater, 146 Vt. at 364. Lalonde and Clearwater, however, suggest this construct has two limitations. The first is clear, affirmative evidence (such as a statement on the plat to the effect) of the seller's intent not to

give such rights to future purchasers.  Id.  The second, suggested in
Lalonde, is that the right to an implied easement may waiver or be
affected by its subject matter.  Lalonde, 157 Vt. at 284 n.2 (citing Tesson
v. Porter Co., 86 A. 278 (Pa. 1913) ("broad" view subject to exception
where municipality vacates)).  While easements by reference have been
recognized for streets, right of ways, parks, open space, sewers, and
bayous, see generally Restatement (Third) of Property § 2.13 (2000),
courts have not been as uniform for more "extensive" rights.  Compare
Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co., 427 P.2d
249, 251–52 (N.M.1967) (granting easement by reference to plat to areas
designated as park, club house, golf course, and tennis courts) , with
Crystal Lakes Condo. Clubhouse Unit Ass'n v. Smith, 1997 WL 154104,
at *3 (9th Cir.) (Rejecting plaintiffs' claim for an easement by reference to
a clubhouse and golf course).  The rationale behind this appears to have
two sources.  With the rise of planned communities and subdivisions that
sell homes as they are constructed, there seems to be a concern with
sellers who promise more than they intend to deliver.[?]  This is apparent in
the Ute Park case, where the court emphasized the developer's extensive
use of the plat in brochures to promote and sell lots.  427 P.2d at 251.
Simultaneously, courts also tend to disfavor finding implied easements

---

[1]  This kind of bait-and-switch tactic to sell lots was employed in a
slightly different manner at the Forest Lawn Cemetery in Glendale, California,
satirized in Evelyn Waugh's novella, The Loved One.  As the cemetery
expanded, salesmen would take prospective customers to the lots and promote
the views, beautiful trees, and the reproduction of Michelangelo's "Moses" that
would watch lovingly over their dearly departed for eternity.  Of course, once
the lots in that section were sold, a forklift would come in and take Moses to the
next expansion.  The practice earned the reproduction the moniker "movable
Moses."

because they burden estates and "retard building and progress." 25 Am. Jur.2d Easements and Licenses § 23 (1996). Together, these rationales have caused courts to look cautiously at more complex claims for easements by reference when the asserted right looks less like a private right to a road or open space and more like a public right to a dedicated purpose, such as a school site, cemetery, or recreational facility. See Lalonde, 157 Vt. at 284 (indicating that a private right to parks or other open space might be subject to the "beneficial enjoyment" rule); see also Annot., Conveyance of Lot with Reference to Map or Plat as Giving Purchaser Rights in Indicated Streets, Alleys, or Areas Not Abutting His Lot, 7 A.L.R.2d 604, at §§ 11–15 (1949 & 2004 Supp.) (". . . in some cases . . . a grantee to whom a conveyance is made by reference to a map or plat upon which parks or other open areas are delineated acquires a private right of user in such parks, etc. . . . where such area is 'necessary' to the enjoyment of his premises."). In such cases, the facts become controlling and evidence, such as the vacating of the "dedicated" municipal purpose, the fact that purchasers are still able to enjoy the use of their lots, and the lack of evidence that seller used the plat as a tool to sell the lots, will determine if an easement by reference exists. Bacon v. Onset Bay Grove Ass'n, 136 NE 813 (Mass. 1922).

In this respect, our analysis of plaintiff's claim resembles more of an equitable evaluation. See Crabbe v. Veve, 150 Vt. 53, 55–56 (1988). Given that implied easements are disfavored, that enforcing the right would create a particularly heavy burden to run with the land, and for a purpose that has been disavowed by the very party intended, it is difficult to see how plaintiffs would have a right to the reserved school site parcel merely because it was part of the plat referenced in their deeds. Plaintiff's attempt to sidestep this analysis is to argue that they do not want the

parcel to remain a school site but rather that the right they seek is open space. Essentially their argument is that 13.8 acres was far too big a site for a school building, so it inherently implies that there would be open space in the form of parks, playgrounds, and undeveloped land. It is this land that plaintiffs argue they have a right to through an easement by reference. Beguiling as this argument may be to those of us who remember elementary schools surrounded by acres of open fields of corn, baseball diamonds, soccer fields, and tennis courts, the plaintiffs' are essentially urging an implied description to support an implied easement. Such double implication is too far afield. An implied easement has to have some definite description, whether it be "clubhouse" or "open space." We cannot presume that such descriptions would necessarily include "chilled water fountain" or "maple tree," simply because most clubhouses have a chilled water fountain and most open fields have at least one maple tree. We decline to read implied features into a legal construct that is already based upon generalities and policy and a plat feature that necessarily presupposes municipal support.

### Open Space Equitable Servitude from 1985 Deed

Unlike plaintiffs' first argument, their second is premised on the words of the 1985 deed and their alleged intent and effect. As a matter of contract interpretation, absent ambiguity, we will interpret the contract as a matter of law. Luneau v. Peerless Ins. Co., 170 Vt. 442, 445 (2000). Plaintiffs argue that the 1985 deed contained a reversion clause, which would cause the school site to return to Essex Housing Partnership—to be held forever as open space—if the School District exercised its purchase option over the 20 acre open space parcel. By receiving a warranty deed in 1992 for the 20 acres, plaintiffs argue the School District exercised its purchase option and thereby caused the school site to revert to Essex Housing Partnership under an open space equitable servitude. Setting aside defendant's arguments concerning the chain of title for this deed, we disagree with plaintiffs' conclusion. An option contract is not an agreement but rather a "continuing offer by one to sell and convey within

the time and upon the conditions stated." 77 Am. Jur. 2d <u>Vendor and Purchaser</u> § 35 (1997).

In this case, one of the conditions of the purchase option was that the School District build a school building on the property within five years of Countryside's completion. The fact that the parties exchanged deeds acknowledged that the School District intended to exercise its option, but the building term remained unfulfilled. Thus, the School District took possession of the property, but it did not take in accordance with the option's original terms. Moreover, the School District returned the parcel in 1995 before it could exercise the terms of the purchase option. The importance of this building term is made clear on the first page of the option contract, where the parties note that their intention in making the option is to give the School District a choice in where to build the school, between the 13.8 acre and the 20 acre parcels. Thus, the whole point of the purchase option in conjunction with the 1985 deed for the school site was to provide the School District with one school site while reserving one open space. The fact that the School District walked away from both parcels does not change this effect and intent. Therefore, we conclude that the reversion clause in the school site deed was not triggered by the 1992 transfer of title for the 20-acre parcel and that plaintiffs' equitable servitude, if it would arise from the deed, was not kindled.

Based on the foregoing, defendant's motion for summary judgment is granted. Plaintiffs' motion is denied. Defendant should submit a proposed declaratory judgment, suitable for recording.

Dated at Burlington, Vermont, _____, 2004.

_____

Judge