2005 VT 101

## Denise A. Noble, et al. v. William C. Kalanges

[886 A.2d 767]

No. 04-437

Present: Reiber, C.J., Johnson and Skoglund, JJ., and Hayes, Supr. J. and
Grearson, D.J., Specially Assigned

Opinion Filed August 26, 2005

*Christopher J. Smart*, Montpelier, for Plaintiffs-Appellants.

*Mark L. Sperry* of *Langrock Sperry & Wool, LLP*, Burlington, for
Defendant-Appellee.

¶ 1. **Johnson, J.** In this appeal, we consider whether plaintiffs have the right to prevent defendant from developing his property, which at one time was designated on a subdivision plat as "reserved" for an elementary school. Plaintiffs argue that because their deeds reference the subdivision plat, they acquired an implied easement that limited the use of the site to a school. Alternatively, they argue that through a reversionary clause of a 1985 warranty deed, they acquired an equitable servitude that required the site to remain open space. The trial court rejected these arguments and granted summary judgment for defendant. We affirm.

¶ 2. The following facts are undisputed. Plaintiffs and defendant reside in Essex, Vermont. Defendant owns real property in a subdivision called "Countryside," as do some plaintiffs. The remaining plaintiffs own property in an adjoining subdivision called "Essex Park."

¶ 3. The subdivisions were created as follows. In 1984, Essex Housing Partnership (EHP) recorded a plat depicting the Countryside subdivision. The plat designated an approximately fourteen-acre parcel as "reserved elementary school site." EHP also recorded a plat for the Essex Park subdivision. The Essex Park plat depicted an approximately twenty-acre parcel of land as "common open space area." Both plats expressly stated that they had been approved by the town's planning commission in May 1984 "subject to all requirements and conditions" of the commission's resolution of the same date. As discussed in greater detail below, the planning commission approved the plats on the condition that EHP deed land to the school district for an elementary school.[1]

---

[1] At the time the plats were recorded, the town's subdivision regulations provided that when a proposed development consisted of one hundred or more dwelling units, the planning commission could require the subdivider to reserve a site and mark it on the subdivision plat as a potential school site. Village of Essex Junction, Subdivision Regulations, Rule 8.48 (adopted July 14, 1981). If the commission required that a school site be reserved, the subdivider was required to provide the school district with a warranty deed for the site, free and clear of encumbrances, which would be recorded prior to the initiation of improvements on the site. If the school district did not initiate improvements within five years after the completion of the development, the commission was required to review the continuing need for the school site with the prudential committee. If the commission determined that the site should not continue to be reserved for public school use, the condition of use would be considered void. The regulations also provided that if a development had a potential development capacity of ten or more dwelling units, the commission could require the subdivider to reserve up to fifteen percent of the plat for public open space, park land, or recreational purposes.

¶ 4. Consistent with this agreement, EHP executed two documents in favor of the school district.[2] In February 1985, it conveyed the Countryside site to the school district by deed subject to the following terms and conditions. If the school district did not begin construction of an elementary school building within five years after the completion of the Countryside subdivision, EHP could prompt the planning commission and zoning board to review the Countryside site. If both bodies made unconditional determinations that the school site should not continue to be reserved for public school use, they would notify the school district's governing board of their decision in writing and file a certified copy of their official resolution in the town's land records. If the school district exercised a purchase option for the Essex site in accordance with the terms and conditions of the option (discussed below), then the Countryside site would revert to EHP subject to the restriction that it would be forever reserved as common open space for the benefit of the Essex Park subdivision.

¶ 5. As noted above, EHP also provided the school district with a purchase option for the Essex site in February 1985. The option reiterated that the planning commission's final approval of the Countryside subdivision plat was conditioned on the dedication of a school site, and the school district wanted the option of choosing between the Countryside site and the Essex site for future construction. It explained that the Countryside site had been conveyed to the school district with restrictions by warranty deed but EHP still held title to the Essex site. Thus, and as partial consideration of the final approval of the planning commission, EHP granted the school district an exclusive option to purchase the Essex site for nominal consideration.

¶ 6. The option provided that the grant would revert back to EHP and be forever null and void: (1) if the school district had not commenced construction of a school building on the Essex site within five years after the completion of the Countryside subdivision; or (2) if the school district commenced construction of a school building on the Countryside site. In the case of reversion under either of these clauses, the Essex site would forever remain common open space "as [was] currently required." The option also provided that if the school district

---

[2] It appears from the record that in December 1984 EHP conveyed its interest in the Countryside development to A&G Investments, a Vermont general partnership. A&G Investments joined in the conveyance of the Countryside site "for the purposes of releasing any and all interest they may have in the within described lands and/or interest therein."

gave timely and proper notice of its intent to exercise the option, then EHP must execute and deliver a warranty deed conveying the Essex site to the school district. In July 1992, EHP conveyed the Essex site to the school district via warranty deed. Ultimately, the school district did not build on either site.

¶ 7. In January 1995, EHP assigned defendant its "right, title and interest in and to the reversionary rights" in the property described in the February 1985 warranty deed and the February 1985 purchase option. In July 1995, defendant provided formal notice to the school district that the Countryside development had been completed. In May 1996, defendant requested that the zoning board make a determination regarding the revertible rights of the Countryside site. The board concluded that defendant's request was premature as five years had not yet passed from the completion of the Countryside subdivision. In November 1996, the school district executed a quitclaim deed releasing its interest in the Countryside site to EHP. The next day, EHP executed a quitclaim deed releasing its interest in the Countryside site to defendant.

¶ 8. In August 1999, defendant requested a zoning permit to construct a home on the Countryside site. His request was denied pending a meeting of the planning commission. At a September 1999 meeting, the planning commission determined that the Countryside site would not be used for a school and ownership of the site would therefore revert to EHP. It then granted defendant's request for a permit to build a home on the Countryside site.

¶ 9. In February 2000, the zoning board and the planning commission issued a notice of decision regarding the Countryside site. The notice stated that both boards had agreed that the Countryside site and the Essex site were no longer encumbered by the original restrictions contained in the February 1985 deed and purchase option. The notice was intended to comply with the original deed restrictions, included in deeds to both parcels, which required that a notice of the unconditional resolution of the planning commission and the zoning board be recorded in the town's land records.

¶ 10. In October 2000, defendant obtained an Act 250 permit to construct his home. Defendant began construction on his home in April 2001 and moved in during June 2002. In January 2003, the planning

commission approved defendant's plan to build seven more houses on the site.[3]

¶ 11. In July 2003, plaintiffs filed suit against defendant, seeking the removal of his home and an injunction against the construction of any additional homes on the site. Plaintiffs asserted that they possessed an implied easement and equitable servitude that were enforceable against defendant. Specifically, the Countryside plaintiffs claimed that because the subdivision plat, which was referenced in their deeds, depicted the Countryside site as reserved for a school, they had acquired an implied easement that barred the construction of anything other than a school on the site. The Essex Park plaintiffs argued that the open space restriction in the 1985 deed (conveying the Countryside site to the school district) was triggered when the school district received a warranty deed for the Essex site, and they had thereby acquired an enforceable equitable servitude.

¶ 12. Both parties moved for summary judgment, and the court granted defendant's motion. The court first addressed the Countryside plaintiffs' implied easement claim. It acknowledged that under *Clearwater Realty Co. v. Bouchard*, 146 Vt. 359, 364, 505 A.2d 1189, 1192 (1985), "lot owners acquire rights in all roads, streets, parks, and other designated ways shown on the plat map unless a contrary intent is affirmatively shown." The court distinguished *Clearwater*, however, explaining that a designated school site did not create the same kind of third-party easement as would a right-of-way, street, or park. The court concluded that its analysis of plaintiffs' claim resembled more of an equitable evaluation, and the equities in this case favored defendant. The court noted that implied easements are disfavored and that enforcing the right would create a particularly heavy burden to run with the land, for a purpose that had been disavowed by the intended party. In light of these facts, the court found it difficult to see how plaintiffs would have a right to the reserved school site parcel merely because it was part of the plat referenced in their deeds. It therefore rejected plaintiffs' implied easement claim.

---

[3] Plaintiffs Noble, Wasser, Connors, Cobb, Trendles, Mitchells, Brauneggs, Jordans, and Dalhgren appealed the site plan approval to the environmental court. According to plaintiffs' complaint, a hearing on this appeal was scheduled for July 2003. The status of this appeal is not clear from the record. It appears that the above-named plaintiffs also appealed the planning commission's approval of an amended Act 250 permit reflecting the seven-home development project.

¶ 13. The court similarly rejected the Essex Park plaintiffs' equitable servitude claim. It stated that an option contract was not an agreement but rather a "continuing offer by one to sell and convey within the time and upon the conditions stated." In this case, the court explained, one of the conditions of the purchase option was that the school district build on the property within five years of Countryside's completion. The fact that the parties had exchanged deeds acknowledged that the school district intended to exercise its option, but the building term remained unfulfilled. Thus, the school district took possession of the property but it did not take it in accordance with the option's original terms. Moreover, the court explained, the school district returned the parcel in 1995 before it could exercise the terms of the purchase option.

¶ 14. The court found that the purpose of the option in conjunction with the 1985 deed was to provide the school district with one school site while reserving one as open space; the fact that the school district had walked away from both parcels did not change this effect and intent. The court thus concluded that the reversion clause in the school site deed had not been triggered by the 1992 transfer of title for the Essex site and any equitable servitude that might arise out of the deed was not kindled. The court therefore granted defendant's motion for summary judgment. Plaintiffs appealed.

¶ 15. Plaintiffs first argue that the trial court erred in granting summary judgment to defendant on their implied easement claim. According to plaintiffs, the trial court misread and misapplied *Clearwater*, 146 Vt. 359, 505 A.2d 1189. Plaintiffs maintain that the touchstone of *Clearwater* is "inducement," and because they were induced to purchase their lots by the promises of the subdivision plat, the promises of the plat are enforceable. Plaintiffs argue that *Clearwater* should apply to reserved school sites because schools convey an image analogous to a park, the inducement test was met, and the underlying evil ("bait and switch") was shown.

¶ 16. We review a grant of summary judgment using the same standard as the trial court. *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3); *Richart*, 171 Vt. at 97, 758 A.2d at 321. As discussed below, we conclude that *Clearwater* is inapplicable in this case, and the trial court properly granted summary judgment for defendant.

¶ 17. In *Clearwater*, we recognized the "familiar principle of law that where lots are sold by reference to a recorded plat, lot purchasers acquire the right to keep open and use roads, streets, highways, and park areas as indicated on the plat." 146 Vt. at 363, 505 A.2d at 1191. The *Clearwater* case involved a dispute over a beach path that had been depicted on a subdivision plat, which was referenced in defendants' deed. The path did not abut defendants' property, however, and we noted that a minority of jurisdictions held that lot purchasers only acquired easements over platted streets or ways that touched their land or that were necessary for the use and enjoyment of their property. *Id.* We rejected this approach in *Clearwater*, holding with the majority of jurisdictions that "lot owners acquire rights in all roads, streets, parks, and other designated ways shown on the plat map unless a contrary intent is affirmatively shown." *Id.* at 363-64, 505 A.2d at 1192. We explained that the object of this principle was "'not to create public rights, but to secure to persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out on the plan indicated.'" *Id.* at 364, 505 A.2d at 1192 (quoting *Callahan v. Ganneston Park Dev. Corp.*, 245 A.2d 274, 278 (Me. 1968)); see also *Crabbe v. Veve Assocs.*, 150 Vt. 53, 55-56, 549 A.2d 1045, 1047 (1988) (explaining that implied easement rule is rooted in equitable considerations).

¶ 18. In *Lalonde v. Renaud*, 157 Vt. 281, 283, 597 A.2d 305, 306 (1989), we clarified that *Clearwater* set forth an objective test for evaluating implied easement claims. In that case, the trial court held that plaintiffs had acquired an implied easement in a lot that had been depicted as a park on a subdivision plat. *Id.* at 283, 597 A.2d at 305. Defendants argued that they had been denied the opportunity to show that one of the plaintiffs had not actually relied on the existence of the park in purchasing his lot. Defendants asserted that absent reliance on the plat or reliance on the park itself, plaintiff had not been injured by the subsequent development of the lot. *Id.* at 283, 597 A.2d at 306. We rejected this argument, explaining that under *Clearwater*, lot owners were granted "rights as a result of purchasing 'with reference to' a plat, without adding a requirement of specific reliance on depictions in the plat." *Id.*

¶ 19. In reaching our conclusion, we noted that *Clearwater* did not absolutely bar a different analysis in a significantly different factual setting. *Id.* at 284 n.2, 597 A.2d at 306 n.2. We explained that *Clearwater* involved rights-of-way, not parks, and parks might well be

8

considered distinguishable on the basis of a different degree of necessity to the lot owner. *Id.* at 284, 597 A.2d at 306. We indicated that we had had no occasion in *Clearwater* to consider a third line of cases that had adopted the "intermediate" or "beneficial enjoyment" rule, under which the extent of the private right is limited to streets, alleys, or parks that are reasonably or materially beneficial to the grantee. *Id.* Even under this test, we explained, the inquiry into whether a lot owner is benefited would involve an objective test, not one that depends on an owner's specific reliance on what was depicted on the plat map. *Id.*

■ ¶ 20. Plaintiffs argue that, as in *Clearwater*, they acquired an implied easement in the reserved school site because it is "reasonable to infer" that they were induced to purchase their lots by the promises of the plat.[4] While plaintiffs correctly assert that inducement is an integral component of the implied easement analysis, there can be no reasonable inducement under the circumstances of this case. The construction of a school, unlike a platted road or park, is completely outside of the developer's control. Thus, unlike *Clearwater*, and the cases on which plaintiffs rely, plaintiffs could never acquire or enforce a "private right" to the construction of a school building on the Countryside site. Cf. *Clearwater*, 146 Vt. at 363, 505 A.2d at 1191 (platted path); *Lalonde*, 157 Vt. at 283, 597 A.2d at 305 (platted park); *Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.*, 427 P.2d 249, 253 (N.M. 1967) (confirming lot owners' "private right" to construction of golf course depicted on plat where lot sales were based on plat and specific representations to this effect had been made to buyers).

¶ 21. Looking at the types of cases in which the implied easement has been applied, it is apparent that its underlying rationale is simply inapplicable here. In *Callahan*, 245 A.2d at 275-76, for example, the Maine Supreme Judicial Court held that plaintiffs, who had purchased their lot with reference to a plan that depicted a cul-de-sac abutting their lot, acquired the right to prevent the cul-de-sac's destruction. As the court explained, it is not in the public interest "to permit land developers to hold out the hope and expectation of the availability of streets to serve lots being purchased and at the same time to retain the

---

[4] Plaintiffs' assertions that they were in fact induced to purchase their lots by the promises of the plat are immaterial to the resolution of their implied easement claim. See *Lalonde v. Renaud*, 157 Vt. 281, 283, 597 A.2d 305, 306 (1989). We therefore reject their argument that the trial court erred by ignoring evidence to this effect.

power at their whim to subsequently destroy that availability." *Id.* at 279.

¶ 22. Similarly, in *Ute Park Summer Homes Ass'n,* 427 P.2d at 253, a developer sold lots with reference to a subdivision plat that depicted a large open area as a "golf course." *Id.* at 251. The developer then sought to sell the "golf course" area without restriction as to its use. The lot owners sued, and the court held that the lot owners had acquired a legally enforceable right in the property based on the promises of the plat. As the court explained:

> The rationale of the [implied easement] rule is that a grantor, who induces purchasers, by use of a plat, to believe that streets, squares, courts, parks, or other open areas shown on the plat will be kept open for their use and benefit, and the purchasers have acted upon such inducement, is required by common honesty to do that which he represented he would do. It is the use made of the plat in inducing the purchasers, which gives rise to the legally enforceable right in the individual purchasers, and such is not dependent upon a dedication to public use, or upon the filing or recording of the plat.

*Id.* at 253.

¶ 23. Unlike the cases discussed above, and similar cases involving platted streets, parks, and open space areas, the grantor in this case lacks authority to construct a school on the Countryside site and its reservation of the school site cannot reasonably be seen as a promise to purchasers that such construction would actually occur. See generally Restatement (Third) of Property: Servitudes § 2.13, Reporter's Note at 174 (2000) (stating that "[u]nless the grantor has the power to create the servitude, there would be no point to implying the servitude," and citing cases). Indeed, in this case, the grantor was required by the planning commission to reserve the school site and convey the site to the school district to secure approval of the plat.

¶ 24. Under the circumstances of this case, it would be unreasonable for a purchaser to rely on such a designation in purchasing his lot. This is particularly true where, as here, the plat specifically provided that it was approved on the terms and conditions identified by the planning commission, and where the reservation (and subsequent reversion of ownership to the grantor) was consistent with the town's subdivision regulations. Because there can be no reasonable inducement under the circumstances of this case, summary judgment was properly granted for defendant. Given our conclusion, we do not address plaintiffs' claim

that the trial court erred by suggesting that the "broad view" adopted in *Clearwater* is subject to an exception when a municipality vacates.

¶ 25. We turn next to plaintiffs' assertion that the trial court erred in rejecting their equitable servitude claim. Plaintiffs maintain that the open space restriction in the 1985 warranty deed, which conveyed the Countryside site to the school district, was triggered when the school district provided EHP with written notice of its intent to exercise the purchase option for the Essex site. According to plaintiffs, this act constituted the "exercise" of the purchase option as contemplated by the 1985 warranty deed, and the trial court erred by failing to distinguish between the acceptance of the offer (i.e., "exercise" of the option), and the performance of the resulting contract.

¶ 26. Putting aside defendant's assertions regarding chain-of-title, the trial court properly construed the terms of the 1985 warranty deed. The 1985 warranty deed provided that if the school district "exercise[d] its option to purchase" the Essex site "in accordance with the terms and conditions" of the purchase option, then the Countryside site would revert to EHP "subject to the restriction ... that said lands and premises shall be forever reserved as common open space for the benefit of the Essex Park Condominium Regimes." The school district did not exercise its option to purchase the Essex site in accordance with the terms and conditions of the purchase option, and the open space restriction was therefore not triggered.

¶ 27. In construing a deed, the court must "give effect to the intention of the parties if it can be gathered from the language used when interpreted in connection with, and in reference to, the subject matter and purpose sought to be accomplished at the time the instrument was executed." *McDonough v. W.W. Snow Constr. Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973); accord *Kipp v. Chips Estate*, 169 Vt. 102, 105, 732 A.2d 127, 129 (1999); *Welch v. Barrows*, 125 Vt. 500, 504, 218 A.2d 698, 702 (1966) ("The intention of the parties, not the language used, is the dominating factor, and the circumstances existing at the time of the execution of the deed, the situation of the parties and the subject matter are to be considered."). In this case, the intent of the parties is clear — the warranty deed and purchase option were intended to give the school district the option of choosing between the Countryside site and the Essex site for the construction of a school. If a school was built on the Countryside site, then the Essex site would remain open space. Conversely, if the Essex site was used for a school, then the Countryside site would be used as open space for the benefit of the Essex Park subdivision. There is no suggestion in either

document that the parties intended to reserve both sites as open space if a school was not actually constructed on either site. Given the existence of the purchase option, it would be unreasonable to draw such an inference.

¶ 28. We reject plaintiffs' assertion that by providing EHP with written notice of its intent to exercise the option, and receiving a warranty deed for the Essex site in 1992, the school district exercised the purchase option as required by the 1985 warranty deed. Plaintiffs' suggested interpretation would undermine the parties' intent in executing these documents. The purpose of the option was to provide the school district with a site on which to build a school; it follows that exercise of the option in accordance with its terms and conditions, as provided by the 1985 warranty deed, required that construction on the site actually occur. Thus, contrary to plaintiffs' assertion, the school district's actions did not constitute "acceptance" of the offer contained in the purchase option, nor did its actions give rise to a bilateral contract that obligated it to build a school on the Essex site within five years of the completion of the Countryside subdivision.[5] See *Ackerman v. Carpenter*, 113 Vt. 77, 81, 29 A.2d 922, 924-25 (1943) (recognizing that "an acceptance which varies from the offer will not conclude a contract"; and explaining that "[i]n determining what one party intended and the other ought to have understood, regard must be had to the situation and purpose of the parties, the subject matter and course of the negotiations.").

¶ 29. This interpretation is reinforced by the option's provision that the grant would become null and void if *construction* had not occurred on the Essex site within five years after the completion of the Countryside subdivision or if construction had occurred on the Countryside site within this period. The option also provided that if the school district obtained and recorded a warranty deed for the Essex site, this would serve to "protect the rights of the school district" as granted in the purchase option. In other words, the school district would retain

---

[5] In their reply brief, plaintiffs assert that the purchase option no longer exists because it was merged into the 1992 warranty deed for the Essex site. Plaintiffs raise this argument for the first time on appeal, and we therefore do not address it. See *Lane v. Town of Grafton*, 166 Vt. 148, 153, 689 A.2d 455, 457 (1997) ("Failure to raise a reason why summary judgment should not be granted at the trial level precludes raising it on appeal."). Even if this argument had been preserved, however, we note that it would not undermine our conclusion that plaintiffs' interpretation of the 1985 warranty deed is at odds with the parties' intent.

the right to commence construction on the Essex site until five years had elapsed from the completion of the Countryside subdivision. This provision undercuts plaintiffs' assertion that the school district became contractually obligated to construct a school on the Essex site once it provided EHP with its notice of intent to exercise the purchase option. As previously noted, the school district did not exercise its right to commence construction on the Essex site, and indeed, it conveyed the site to the Essex Park Homeowners' Association in December 1998, before the relevant time period had elapsed.

¶ 30. The trial court properly determined that the option was not exercised as required by the 1985 warranty deed, and the open space restriction was not triggered. Given our conclusion, we do not reach plaintiffs' argument that the open space restriction is an equitable servitude. Summary judgment was appropriately granted to defendant on plaintiffs' claims.

*Affirmed.*