Regan v. Pomerleau, No. S0239-11 CnC (Crawford, J., Oct. 27, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT
CHITTENDEN UNIT

CIVIL DIVISION
DOCKET NO.: S0239-11 CnC

UTE REGAN

v.

ANTONIO POMERLEAU,
DEFOREST REALTY, INC. and
CITY OF BURLINGTON

DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is a dispute over access to property located off Chittenden Drive in Burlington. The property has recently been approved for subdivision by the Burlington Development Review Board subject to a requirement that plaintiff demonstrate that both lots will have access to Chittenden Drive. Plaintiff seeks summary judgment on her claims that she has an existing easement sufficient in scope to provide access to both lots and, alternatively, that she has acquired title to the servient estate by adverse possession.

FACTS

The facts which relate to the easement are not in dispute.

In 1955 the Overlake Park Development Corporation subdivided property lying to the east of S. Willard Street (Route 7) in Burlington. OPDC built several streets, including Chittenden Drive which runs from S. Willard Street east to Deforest Heights. OPDC recorded a plan of the lots (plat) in 1955. The plat includes Lot 76 which is the parcel at issue in this case. Chittenden Drive was laid out along a 50 foot strip. As constructed, the road was (and remains) 30 feet wide. OPDC retained title to the 10 foot "greenspace" on either side of the paved road.

In 1961 OPDC conveyed some of the lots (including Lot 76) and all of the streets (including Chittenden Drive) to Deforest Realty, Inc. The deed includes a covenant restricting the use of each lot to "one dwelling for a single family dwelling unit." The covenant expired by its terms in 1995.

In 1965, Deforest Realty conveyed Lot 76 to McNamara. The deed includes a metes and bounds description which places the boundary of Lot 76 10 feet from the curb of Chittenden Drive. Deforest Realty retained ownership of the 10 foot strip bordering Chittenden Drive. The property lines for the McNamaras and other people who bought lots fronting on Chittenden Drive were located 10 feet from the curb in order to preserve the original 50 foot right of way.

The 1965 deed for lot 76 contains a description of the property as "all of Lot 76 as laid down on a plan of lots of [OPDC]." It also states that the lot is subject to the covenants and agreements which are more particularly set forth in the 1961 deed from OPDC to Deforest Realty.

A home was built on Lot 76 in the 1960's. The property passed through several families. Plaintiff Ute Regan and her then husband purchased the home and lot in 1987.

In 2009, plaintiff, by now sole owner of the property, sought subdivision approval from the Burlington Development Review Board. In a decision dated September 1, 2009, the DRB ruled in favor of the subdivision request. The lot comprises a total of 17,656 square feet. The minimum zoning requirement at the time of application was 6,000 square feet per residence. The DRB was satisfied that other requirements such as setback and lot coverage were met. The DRB was concerned about access to Chittenden Drive. The Board noted:

> Both lots will have at least 60' of road frontage, the minimum required; however, there was testimony that a 10' wide strip of privately owned land runs between the subject lot and Chittenden Drive (a private street). As a result, the applicant must prove that access to this street can be obtained from the owner of the street and associated green belt.

Other parties have appealed the DRB ruling to the Environmental Court. The EC appeal is stayed until a ruling on the property issues of access, easement, and adverse possession are resolved by the Civil Division.

ANALYSIS

The case raises two legal issues: (1) what is the source of the plaintiff's right to access Chittenden Drive; and (2) does this right permit access from a second home following subdivision of plaintiff's property?

> I. Nature of the right of access

In *Clearwater Realty Co. v. Bouchard*, 146 Vt. 359, 363 (1985), the Vermont Supreme Court adopted the majority position that deed reference to a recorded plat conveys "the right to keep open and use roads, streets, highways, and park areas as indicated on the plat." The Court rejected a narrow construction of this right of access which would limit the use of roads shown on the plat to those touching their land. Instead, "lot owners acquire rights in all roads, streets, parks, and other designated ways shown on the plat map unless a contrary intent is affirmatively shown." *Id*. at 364.

The rule has been developed in subsequent cases. In *Crabbe v. Veve Associates*, 150 Vt. 53 (1988), the Court upheld express easements set out in the deeds which made reference to recorded plats. These express easements survived the abandonment of the subdivision described in the plats. In distinguishing the *Clearwater* decision, the Court noted that a mere reference in the deed to the plat created an implied easement "rooted in equitable considerations, and it

2

simply recognizes that the sale of a lot under such circumstances also conveys rights to use the platted roadways and park areas." *Id*. at 56.

In *Lalonde v. Renaud*, 157 Vt. 281 (1989), the Court reaffirmed the "broad" or "unity" rule adopted in *Clearwater*. The decision rejects arguments that subsequent lot owners must prove specific reliance upon the plat at the time of purchase. "There is no reason why purchasers who purchased their properties from someone other than the developer should not enjoy all of their predecessors' rights and interest…" *Id*. at 285.

In *Noble v. Kalanges*, 179 Vt. 1 (2005), the Court rejected claims by neighbors that the reservation of space on a plat for a potential school prevented the reversion and development of the land after the school district declined to build the school. The Court emphasized the need to consider on an objective basis whether the provision in the plat for a potential school functioned as a "reasonable inducement" to purchasers. Setting aside land on a conditional basis for the future construction of a school "cannot reasonably be seen as a promise to purchasers that such construction would actually occur." *Id*. at 9.

These cases establish several principles which apply to this case. The original purchasers of Lot 76 and their successors acquired an implied easement of access over the 10 foot greenbelt strip. Access to the adjacent private road was an obvious inducement to any purchaser. See Restatement (Third) of Property: Servitudes § 2.13 cmt. a (grantor who uses a description that refers to a plat or map intends to include the use rights shown on the map, and the grantee reasonably expects to receive them) No one would buy a city building lot which was inaccessible. Since the easement is equitable in its origins, it is more flexible in scope than an express easement which appears in the deed. The scope of the implied easement is determined by the reasonable expectations of the purchasers, expressed as "inducement," rather than by a metes and bounds description. Purchasers receive the benefit of amenities such as roads and parks which appear in the plat, but a future event such as the failure to build a road could lead to the extinguishment of the implied easement.

## II. Is the implied easement limited to a single home?

Defendants Deforest Realty and Antonio Pomerleau contend that the implied easement, conveyed through recording of the plat, provides for access by one home only because the original deed from OPDC to Deforest Realty contains a covenant limiting use of the lot to construction of one single family home. The covenant expired by its terms in 1995. The defendants now seek to limit the use of the lot by limiting the implied easement to the conditions in effect prior to 1995. They rely upon *Traders, Inc. v. Bartholomew*, 142 Vt. 486 (1983), for the proposition that an implied easement cannot be enlarged by subsequent necessity.

The scope of the implied easement in this case is not defined by principles of necessity. It is defined by reference to the reasonable expectations of the purchasers of the lot, including subsequent purchasers. Applying an objective standard, a purchaser buying the lot with

3

knowledge of the restrictive covenant would understand that he or she could not subdivide until after 1995. Subdivision after that date, however, was expressly contemplated in the deed since the restriction expired.

This case is essentially the inverse of *Noble v. Kalanges*. In that case, any implied easement dedicating the school site to public use expired when the town declined to build the school. A future event, always conditioned upon action by the third-party municipality, failed to occur and any expectation by neighbors that the site would remain undeveloped came to an end. Indeed, no reasonable expectation sufficient to give rise to an implied easement was ever present.

In this case, the opposite has occurred. The future event – the expiration of the restrictive covenant – took place as planned in 1995. Subject to changes in the zoning ordinance, subdivision of Lot 76 after 1995 was contemplated by seller and purchaser alike. The plaintiff and other lot owners would have an entirely reasonable expectation that the implied easement would apply to any legal use of the property. An express easement could have provided for only one curb cut. An implied easement, more flexible because less clearly defined, provides only that purchasers of the lot and their successors shall have access to Chittenden Drive in accord with the plat. In ruling that the implied easement is equally available to plaintiff and to a future owner of the other half of Lot 76, the court is not so much increasing the burden of the easement as it is defining the original scope of the easement to include future development which was contemplated in the original deed. See Restatement (Third) of Property: Servitudes § 4.1(1) ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.").

For these reasons, the court will issue judgment on the easement issue in favor of the plaintiff.

III. Adverse Possession Claim

The court denies the motion for summary judgment on the adverse possession claim because the claim presents issues of disputed fact. These include the issue of permission. Defendants have always given permission for access across the driveway portion of the 10 foot strip since both sides agree that an implied easement has been in place for almost 50 years. There is no information from either side about whether the other "use" of the strip, principally mowing and raking, by the plaintiff and her predecessors was permissive or hostile in nature. On such a thin factual record, the court is unable to enter a judgment which would for all practical purposes strip the Pomerleau defendants of title to the entire length of the two 10 foot strips along the length of Chittenden Drive.

CONCLUSION

The court grants the plaintiff's motion for summary judgment with respect to the claim of implied easement. The court denies the motion for adverse possession. The parties and the court have not reached the issue of whether Chittenden Drive has become a public road through dedication and acceptance.

Plaintiff shall advise the court and the parties within 15 days whether she seeks a final judgment on the easement issue only with dismissal without prejudice of the remaining claims or whether the matter should be scheduled for trial on the adverse possession and public road issues.


Dated: _____
                        Geoffrey Crawford,
                        Superior Court Judge